Esperanza GUTIERREZ, Petitioner,

v.

Edward R. COLLINS, Respondent.

No. B–7943.

Supreme Court of Texas.

June 13, 1979.

Rehearing Denied July 11, 1979.

Sam J. Dwyer, Jr., El Paso, for petitioner.

Dudley & Dudley, Paul W. Dudley, El Paso, for respondent.

### SAM D. JOHNSON, Justice.

This appeal brings into question the continued validity of two conflict of laws rules which heretofore have been considered well-established in this state: the rule of *lex loci delicti* and the dissimilarity doctrine. The trial court dismissed petitioner's case for want of jurisdiction. The court of civil appeals affirmed. 570 S.W.2d 101. Having carefully considered the matter, we reverse the judgments of the trial court and the court of civil appeals. This cause is remanded to the trial court so that it may proceed to a trial on the merits.

The facts of this case are not difficult. Gutierrez, plaintiff below and petitioner here, brought suit against Collins, defendant below and respondent here, for damages for personal injuries suffered in an automobile accident that occurred in Zaragosa, State of Chihuahua, Mexico. Plaintiff Gutierrez alleged that the collision was caused by the negligence of defendant Collins. Gutierrez and Collins are both residents of El Paso, Texas. The petition prayed for damages for medical expenses, loss of earning capacity, lost wages, and pain and suffering, or, in the alternative, for moral reparations as allowed under Mexican law, which was specifically pleaded. Collins filed a plea to the jurisdiction, arguing that the dissimilarity doctrine required dismissal of the case. At a hearing on this plea, the trial court received evidence concerning the laws of Mexico. The court then sustained defendant Collins' plea to the jurisdiction and dismissed Gutierrez's suit. The court of civil appeals affirmed.

The long-standing rule in tort cases in this state has been that the law of the place where the wrong occurred, *i. e.*, the *lex loci delicti*, dictated the substantive rights of the parties and was to be applied by a Texas court in the trial of the case. By this rule, if suit were brought in Texas for a tort committed in Mexico, the trial court was to apply the law of Mexico. It was

here, however, that the dissimilarity doctrine deprived the plaintiff of a judicial forum. By this doctrine, the Texas court was required to dismiss the cause for want of jurisdiction because the tort laws of Mexico were considered to be so different from those of Texas as to make it impossible for a Texas court to apply and enforce them. The time has come to reconsider both of these rules.

### *LEX LOCI DELICTI*

It must be understood at the outset that the rule of *lex loci delicti* owes its origins to the courts. While not formally stated until the end of the nineteenth century in *De Ham v. Mexican Nat. Ry. Co.*, 86 Tex. 68, 23 S.W. 381 (1893), it clearly was within the contemplation of the court much earlier. The rights of the moving party always turned on the substantive law of the place where the injury occurred. *St. Louis, I. M. & S. Ry. Co. v. McCormick*, 71 Tex. 660, 9 S.W. 540 (1888); *Texas & P. Ry. Co. v. Richards*, 68 Tex. 375, 4 S.W. 627 (1887). It is the contention of the plaintiff Gutierrez that this court may effect a change in this area of the law by the simple expedient of overruling those cases. The defendant Collins argues to the contrary that the Legislature has taken the matter out of the hands of the courts by codifying the *lex loci delicti* rule in statutory form. Thus, according to Collins, what began as a rule of common law has now been transformed into a statutory edict and may be changed only by the Legislature.

The statute in question is Article 4678, Texas Revised Civil Statutes Annotated. The accident in question occurred on December 25, 1973. The statute was substantially changed by amendment in 1975, but the version existing in 1973, the time of the accident, read as follows:

"Art. 4678. Death in foreign State

"Whenever the death or personal injury of a citizen of this State or of the United States, or of any foreign country having equal treaty rights with the United States on behalf of its citizens, has been

or may be caused by the wrongful act, neglect or default of another in any foreign State or country for which a right to maintain an action and recover damages thereof is given by the statute or law of such foreign State or country, such right of action may be enforced in the courts of this State within the time prescribed for the commencement of such actions by the statutes of this State. The law of the forum shall control in the prosecution and maintenance of such action in the courts of this State in all matters pertaining to the procedure."

Defendant Collins argues that the statute, which was enacted in 1913, reflects a legislative mandate to the courts to apply the *lex loci delicti* rule. He asserts that the statute covers all negligence cases since it speaks of "death *or personal injury*," thereby depriving the courts of any discretion in the matter. Plaintiff Gutierrez, on the other hand, argues that the statute is mandatory only in statutory causes of action, such as a suit brought under the Wrongful Death Statute, Texas Revised Civil Statutes Annotated, Article 4671, *et seq.*, of which Article 4678 is a part. Gutierrez argues that in a common law cause of action, such as the instant case, the statute is merely permissive; that is, it authorizes one to bring suit in Texas, but does not dictate any conflict of laws rules to be applied by the court. We agree with this construction.

Some cases do contain broad language that might be construed as supporting Collins' theory. For example, it was stated in *Jones v. Louisiana Western Ry. Co.*, 243 S.W. 976, 978 (Tex.Com.App.1922, jdgmt. adopted), in reference to the meaning of Article 7730½, the predecessor statute to Article 4678:

"The law of the place where the cause of action arose, the lex loci delictus, must determine the nature of the cause of action, and the defenses, if any, available. The case asserted must stand or fall upon that law."

One year later the statute was again construed as a codification of the *lex loci delicti* rule in *El Paso & Juarez Traction Co. v. Carruth*, 255 S.W. 159, 159 (Tex.Com.App. 1923, jdgmt. adopted):

"This statute merely declared what had theretofore been the universal rule, that the lex loci delictus must determine the nature of the cause of action, and the extent of the recovery, while the forms of remedies and the mode of pursuing same are determined by the law of the forum."

More recently, this court wrote in *Francis v. Herrin Transportation Company*, 432 S.W.2d 710, 712–13 (Tex.1968):

"Thus, the right conferred by that article [4678] is subject to the qualifications imposed by its terms, and one invoking the jurisdiction of our courts under the article must establish that he has *at that time* 'a right to maintain an action and recover damages' *under the statute or law of the state or country where the wrongful act or neglect occurred*." [Emphasis partly in original and partly added.]

This language was cited as controlling authority in *Click v. Thuron Industries, Inc.*, 475 S.W.2d 715, 716 (Tex.1972).

Several courts of civil appeals have relied on Article 4678 in applying the *lex loci delicti* rule in suits for personal injuries as well as wrongful death actions. *Withers v. Stimmel*, 363 S.W.2d 144, 148 (Tex.Civ.App. —Dallas 1962, writ ref'd n. r. e.); *Carter v. Tillery*, 257 S.W.2d 465, 466–67 (Tex.Civ. App.—Amarillo 1953, writ ref'd n. r. e.); *Grandstaff v. Mercer*, 214 S.W.2d 133, 134–35 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n. r. e.). The Fifth Circuit has viewed Article 4678 as a "clear mandate" to apply the *lex loci delicti* rule. *Ramirez v. Autobuses Blancos Flecha Roja, S.A. de C.V.*, 486 F.2d 493, 497 (5th Cir. 1973). Stumberg was in accord with this view of the statute. Stumberg, *Conflict of Laws—Torts—Texas Decisions*, 9 Tex.L.Rev. 21 (1930); G. Stumberg, Principles of Conflict of Laws 181 n. 7 (3rd ed. 1963).

Nevertheless, while the above-quoted language marks no distinction between statutory and common law causes of action, the fact remains that all of the decisions by this court involving Article 4678 have been

wrongful death actions. The instant case represents the first opportunity this court has had to determine whether Article 4678 is of mandatory application in a common law cause of action as well.

The distinction between common law causes of action and those created by statute has long been recognized. Nearly a century ago it was stated by this court in *Willis v. Mo. Pac. R'y Co.*, 61 Tex. 432, 434 (1884):

> "Where the action is transitory and is based on personal injuries recognized as such by universal law, the suit may be brought wherever the aggressor is found, irrespective of the provisions of the local law, or whether there be any law at all in force at the place where the wrong was committed. . . .
>
> "But where the right of action does not exist except by reason of statute, it can be enforced only in the state where the statute is in existence and where the injury has occurred." [1]

In 1962 this court expressly reserved judgment on whether Article 4678 was of mandatory application. *Flaiz v. Moore*, 359 S.W.2d 872, 876 (Tex.1962). The statutory nature of Article 4678 was particularly noted in *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 193–94 (Tex.1968):

> "Under the law as it now exists, there is no choice of laws. Article 4671 does not apply to wrongful acts resulting in death which are committed outside of Texas, consequently the only basis for this purely statutory action is the Colorado statute which is enforceable in Texas by virtue of Article 4678.
>
> "It is one thing for the judicial branch to amend a statute and quite another thing to modify a rule of common law. . .
>
> " . . .
>
> " . . . The doctrine of lex loci delicti is a court-made rule. . . ."

Most commentators have suggested that Article 4678 does not mandate enforcement of the *lex loci delicti* rule. As Professor Weintraub noted:

> "This statute is very far from establishing a mandatory choice-of-law rule pointing to the law of the place of injury . . . . It says that a right created by the foreign law 'may' be enforced in Texas. . . . [O]n several occasions it has been pointed out that 'may' does not mean 'must.' " Weintraub, *Choice of Law for Products Liability: The Impact of the Uniform Commercial Code and Recent Developments in Conflicts Analysis*, 44 Tex.L.Rev. 1429, 1442 n. 46 (1966).

*See also* Thomas, *Conflict of Laws*, 23 Sw. L.J. 159, 160–61 (1969); Note, 8 St. Mary's L.J. 572, 578 (1976); Note, 22 Sw.L.J. 863, 865 (1968).

This distinction has been recognized and applied by federal district courts in common law suits for personal injuries. *Continental Oil Co. v. General Am. Transp. Corp.*, 409 F.Supp. 288, 295–96 (S.D.Tex.1976); *Couch v. Mobil Oil Corporation*, 327 F.Supp. 897 (S.D.Tex.1971). In *Couch* the court was faced with the choice of applying Libyan law under the *lex loci delicti* rule or Texas law under the "governmental interests analysis" theory. The *Couch* court justified its decision to apply Texas law by holding that Article 4678 was part of the statutory scheme creating a wrongful death action and was mandatory only in those actions. Since personal injuries were involved, the federal court felt free to rely on a common law approach to the problem. 327 F.Supp. 897 at 900.

■ This analysis is correct. Article 4678 compels the application of the *lex loci delicti* rule only in cases brought on statutory causes of action. It is permissive in cases brought on common law causes of action and does not mandate the application of *lex loci delicti* in those cases. As noted, all previous decisions by this court have involved wrongful death actions; therefore, this construction of the statute is compati-

---

1. We quote this language for illustrative purposes, but do not express an opinion on the essential holdings of *Willis* that a statute may not have extraterritorial application. *See Marmon v. Mustang Aviation, Inc.*, 410 S.W.2d 182 (Tex.1968).

ble with those opinions. Obviously, however, the broad language contained in this court's opinions in *Jones, Caruth, Francis,* and *Click, supra,* must be given a somewhat narrower reading. Those courts of civil appeals holdings which conflict with today's decision are disapproved to the extent they so conflict.

*Lex loci delicti* was at one point a universally accepted rule in American jurisprudence. It was incorporated in the Restatement (First) of Conflicts. It no longer occupies such a position of esteem. Less than half the states continue to adhere to the doctrine and the clear trend over the past fifteen years has been away from the old rule in favor of some alternative theory. When faced with the choice, more than twice as many states have abandoned *lex loci delicti* as have retained it.[2]

2. Fully half the states have rejected the *lex loci delicti* rule. *Armstrong v. Armstrong,* 441 P.2d 699 (Alaska 1968) (governmental interests test); *Schwartz v. Schwartz,* 103 Ariz. 562, 447 P.2d 254 (1968) (Restatement); *Wallis v. Mrs. Smith's Pie Co.,* 261 Ark. 622, 550 S.W.2d 453 (1977) (Leflar); *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967) (governmental interests); *First National Bank in Fort Collins v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973) (Restatement); *Gaither v. Myers,* 131 U.S.App.D.C. 216, 404 F.2d 216 (1968) (governmental interests); *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970) (Restatement); *Fuerste v. Bemis,* 156 N.W.2d 831 (Iowa 1968) (Restatement); *Wessling v. Paris,* 417 S.W.2d 259 (Ky.1967) (*lex fori*); *Jagers v. Royal Indemnity Company,* 276 So.2d 309 (La.1973) (governmental interests); *Pevoski v. Pevoski,* 371 Mass. 358, 358 N.E.2d 416 (1976) (limited adoption of Restatement); *Beaulieu v. Beaulieu,* 265 A.2d 610 (Me.1970) (Restatement); *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973) (Leflar, moving away from Second Restatement which it adopted in 1966); *Mitchell v. Craft,* 211 So.2d 509 (Miss.1968) (Restatement); *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. 1969) (Restatement); *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1966) (Leflar); *Mellk v. Sarahson,* 49 N.J. 226, 229 A.2d 625 (1967) (Restatement); *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963) (Restatement), *but cf. Tooker v. Lopez,* 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969) (governmental interests); *Issendorf v. Olson,* 194 N.W.2d 750 (N.D.1972) (Restatement); *Brickner v. Gooden,* 525 P.2d 632 (Okl. 1974) (Restatement); *Casey v. Manson Construction and Engineering Co.,* 247 Or. 274, 428 P.2d 898 (1967) (Restatement); *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964) (governmental interests); *Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917 (1968), *cert. denied,* 393 U.S. 957, 89 S.Ct. 387, 21 L.Ed.2d 371 (1969) (Leflar); *Johnson v. Spider Staging Corporation,* 87 Wash.2d 577, 555 P.2d 997 (1976) (Restatement); *Wilcox v. Wilcox,* 26 Wis.2d 617, 133 N.W.2d 408 (1965) (Restatement), *but cf. Heath v. Zellmer,* 35 Wis.2d 578, 151 N.W.2d 664 (1967) (Leflar).

At least eleven states have considered overruling the doctrine, but have refused to do so.

*Gibson v. Fullin,* 172 Conn. 407, 374 A.2d 1061 (1977); *Friday v. Smoot,* 211 A.2d 594 (Del. 1965); *Hopkins v. Lockheed Aircraft Corporation,* 201 So.2d 743 (Fla.1967); *McDaniel v. Sinn,* 194 Kan. 625, 400 P.2d 1018 (1965), *but cf. Brown v. Wichita State University,* 219 Kan. 2, 547 P.2d 1015, 1031 (1976) (indicating a reconsideration is possible); *White v. King,* 244 Md. 348, 223 A.2d 763 (1966); *Abendschein v. Farrell,* 382 Mich. 510, 170 N.W.2d 137 (1969), *but cf. Sweeney v. Sweeney,* 402 Mich. 234, 262 N.W.2d 625 (1978), *and Sexton v. Ryder Truck Rental, Inc.,* 84 Mich.App. 69, 269 N.W.2d 308 (1978, writ filed); *First Nat. Bank in Albuquerque v. Benson,* 89 N.M. 481, 553 P.2d 1288 (N.M.App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976); *Shaw v. Lee,* 258 N.C. 609, 129 S.E.2d 288 (1963), *and Henry v. Henry,* 291 N.C. 156, 229 S.E.2d 158 (1976); *Heidemann v. Rohl,* 86 S.D. 250, 194 N.W.2d 164 (1972); *Winters v. Maxey,* 481 S.W.2d 755 (Tenn.1972); *McMillan v. McMillan,* Va., 253 S.E.2d 662 (1979).

Other states apparently following the traditional rule include: *Spencer v. Malone Freight Lines, Inc.,* 292 Ala. 582, 298 So.2d 20 (1974); *Ellington v. Tolar Const. Co.,* 142 Ga.App. 218, 235 S.E.2d 729 (1977); *Crossley v. Pacific Employers Ins. Co.,* 198 Neb. 26, 251 N.W.2d 383 (1977); *Fox v. Morrison Motor Freight, Inc.,* 25 Ohio St.2d 193, 267 N.E.2d 405, *cert. denied,* 403 U.S. 931, 91 S.Ct. 2254, 29 L.Ed.2d 710 (1971); *Algie v. Algie,* 261 S.C. 103, 198 S.E.2d 529 (1973); *Hopkins v. Grubb,* 230 S.E.2d 470 (W.Va.1977); *Brown v. Riner,* 500 P.2d 524 (Wyo.1972).

There apparently are no reported decisions of recent vintage by the state courts of Hawaii, Idaho, Montana, Nevada, Utah, or Vermont directly in point. *But see Rungee v. Allied Van Lines, Inc.,* 92 Idaho 718, 449 P.2d 378 (1968) (Restatement for contract conflicts); *Wells Fargo & Co. v. Wells Fargo Express Co.,* 358 F.Supp. 1065 (D.Nev.1973) (*lex loci*), *vacated on other grounds,* 556 F.2d 406 (9th Cir. 1977), *but cf. Hanley v. Tribune Pub. Co.,* 527 F.2d 68 (9th Cir. [Nev.] 1975) (Restatement); *Donahue v. Warner Bros. Pictures,* 194 F.2d 6, 22–24 (10th Cir. [Utah] 1952) (*lex loci*); *Pioneer Credit Corporation v. Carden,* 127 Vt. 229, 245 A.2d 891 (1968) (Restatement for contract conflicts), *but cf. Marra v. Bushee,* 447 F.2d 1282

No great purpose would be served by detailing at length the affirmative and negative arguments concerning *lex loci delicti* and its alternatives. Suffice it to say that a review of the more prominent decisions and scholarly writing in this field reveals primarily three arguments in favor of retaining the traditional rule. First, it is said that *lex loci delicti* provides a uniform, consistent, and predictable rule of law, thus simplifying the task of both lawyers and the courts. Secondly, every alternative theory proposed to date would lead to varying, inconsistent, and unpredictable results, which would serve only to confuse the public and profession alike, as well as to burden the courts with a difficult chore. Finally, it is asserted that stare decisis precludes a move away from the well-established rule of *lex loci delicti.*

The short answer to the first argument is that the traditional rule, in its search for uniformity of result and ease of application, ignored the very substantial interests of the forum state in applying its own law. The results reached were most often arbitrary and unjust. To avoid these results, courts engrafted exceptions to the rule or circumvented its operation by strained characterizations of the facts. This led to an undermining of uniformity and predictability which were the supposed virtues of *lex loci delicti.* "The result was an unworkable, irrational system." 3 J. Dooley, Modern Tort Law § 46.02 (1977). Even without this judicial maneuvering, certainty and predictability were irrelevant considerations in the case of unintentional torts such as presented in the instant case.

Secondly, while the alternative theories to *lex loci delicti* admittedly have experienced some growing pains, the need to take into account factors other than the geographical location of the tort justifies this added burden. As with any new rule of law, it is to be anticipated that there will be some refinement and adjustment; but this is inherent in the judicial process. Ease of administration alone is a wholly inadequate reason for retention of an unjust rule. Further, it is open to question whether *lex loci delicti* truly was easy to administer; witness the difficulty of the court in determining the controlling law of a sister state in the *Francis* case, *supra,* at 713.

■ Finally, the doctrine of stare decisis does not stand as an insurmountable bar to overruling precedent. Stare decisis prevents change for the sake of change; it does not prevent any change at all. It creates a strong presumption in favor of the established law; it does not render that law immutable. Indeed, the genius of the common law rests in its ability to change, to recognize when a timeworn rule no longer serves the needs of society, and to modify the rule accordingly. *Lex loci delicti* had its origins in the days when travel across state lines are relatively rare and perhaps it served a useful purpose in that time. In today's highly mobile society, however, its continued application most commonly produces harsh and inequitable results. It is in recognition of this fact that courts and commentators are seeking to fashion a new rule more attuned to the demands of modern society.[3]

(2d Cir. [Vt.] 1971) (*lex loci*). The intermediate appellate courts of Indiana are in disagreement. *Cf. Witherspoon v. Salm,* 142 Ind.App. 655, 237 N.E.2d 116 (1968) (Restatement), *rev'd on other grounds,* 251 Ind. 575, 243 N.E.2d 876 (1969), *with Horvath v. Davidson,* 148 Ind.App. 203, 264 N.E.2d 328 (1970) (*lex loci*).
Different writers have different lists. *See* Comment, *Choice of Law: The Abandonment of Lex Loci Delicti—Should Virginia Follow the Trend?,* 13 U. Richmond L.Rev. 133, 133–34 n. 6 (1978); Sedler, *Rules of Choice of Law Versus Choice-of-Law Rules: Judicial Method in Conflicts Torts Cases,* 44 Tenn.L.Rev. 975, 975–76 n. 2 (1977); Annot., 29 A.L.R.3d 603 (1970).

3. In this connection, both parties devote much attention to the 1975 amendments to Article 4678. The last line of the statute was changed to read as follows:
"All matters pertaining to procedure in the prosecution or maintenance of such action in the courts of this State shall be governed by the law of this State, and the court shall apply such rules of substantive law as are appropriate under the facts of the case." Acts 1975, 64th Leg., p. 1382, ch. 530, § 2. This language reflects an obvious change from the *lex loci delicti* rule. Plaintiff Gutierrez argues that the 1975 amendment should be given retroactive effect, a position we reject. Defendant Collins

■ The common law doctrine of *lex loci delicti* in this state is hereby overruled.

The search for an alternative to the *lex loci delicti* rule reveals almost as many theories as there are theorists. There is Currie's "governmental interests" test, Von Mehren and Trautman's "functional approach," Cavers' "principles of preference," Leflar's "choice-influencing considerations" or "better law" theory, and the Restatement (Second)'s "most significant relationship" analysis.[4] Ehrenzweig rejects all of these as being inappropriate for international conflicts cases, opting instead for a *lex fori* approach.[5] Each theory has its own group of adherents and detractors.

It would unnecessarily prolong this opinion to discuss the relative merits and deficiencies of each theory. However, the candid analysis of Professor Leflar seems accurate:

"[T]he results reached in nearly all the modern cases discussed [above] are consistent, and would have been reached under any of the theories.

"A considerable number of the opinions cite the various theorists almost interchangeably, and rely upon just about any precedent that has rejected the old lex loci delicti rule. They can and do rely upon the *Restatement (Second)* which, though it uses the phrase 'most significant relationship', actually in its controlling § 6 and elsewhere includes most of the substance of all the modern thinking on choice of law." R. Leflar, American Conflicts Law § 139 (3rd ed. 1977).

■ Having considered all of the theories, it is the holding of this court that in the future all conflicts cases sounding in tort will be governed by the "most significant relationship" test as enunciated in Sections 6 and 145 of the Restatement (Second) of Conflicts. This methodology offers a rational yet flexible approach to conflicts problems. It offers the courts some guidelines without being too vague or too restrictive. It represents a collection of the best thinking on this subject and does indeed include "most of the substance" of all the modern theories.

Section 6 sets out the general principles by which the more specific rules are to be applied. It states:

"§ 6.   Choice-of-Law Principles

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

argues that the amendment undergirds his stare decisis argument, a position we also reject. As noted above, the statute itself is no bar to this decision, since we have never before construed the pre-1975 version in the context of a common law cause of action. The 1975 amendment need not conflict with or limit our holding in this case. The phrase "such rules of substantive law as are appropriate under the facts of the case," as used in the amendment, carries no self-evident meaning. It must be defined and interpreted by the courts. This opinion should be of some aid in that task.

4. B. Currie, Selected Essays on the Conflict of Laws (1963); Von Mehren & Trautman, The Law of Multistate Problems (1965); D. Cavers, The Choice of Law Process (1965); R. Leflar, American Conflicts Law (3rd ed. 1977); Restatement (Second) of Conflicts § 145. *See also* R. Weintraub, Commentary on the Conflict of Laws (1971); Bodenheimer, *The Need for a Reorientation in American Conflicts Law,* 29 Hastings L.J. 731 (1978); Comment, *At the Crossroads—Lex Loci Delictus or Most Significant Relationship?,* 24 Baylor L.Rev. 359 (1972); Comment, *Texas Public Policy in Conflicts: The Cuckold of Lady Fate,* 22 Baylor L.Rev. 205 (1970); Comment, *Fact Analysis as a Method for Resolving Conflicts Under the State-Interest Approach to Choice-of-Law Problems,* 47 Tex.L.Rev. 108 (1968).

5. 1 A.Ehrenzweig, Private International Law ch. 3 (1972).

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

Section 145 lists factual matters to be considered when applying the principles of Section 6 to a tort case:

"§ 145.  The General Principle

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

It would seem that most courts considering the instant case would dispose of the question by ruling as a matter of law that Texas has the most significant relationship to this controversy and that substantive Texas law should apply. *See Moore v. Montes*, 22 Ariz.App. 562, 529 P.2d 716 (1974); *Brickner v. Gooden*, 525 P.2d 632 (Okl.1974); *Hurtado v. Superior Court of Sacramento County*, 11 Cal.3d 574, 114 Cal. Rptr. 106, 522 P.2d 666 (1974). According to one commentator:

"The uniform practice of the courts that have abandoned the traditional approach when presented with this situation is reflected in what can be termed a rule of choice of law: when two residents of the forum are involved in an accident in another state, the law of the forum applies." Sedler, *Choice of Law in Michigan: A Time to Go Modern*, 24 Wayne L.Rev. 829, 831–32 (1978).

The only contact Mexico has with this case is the fact that the accident occurred there. Further, it makes little sense to apply Mexico's measure of damages, which indexes the amount of recovery to the prevailing wages set by the labor law of that nation, when both Gutierrez and Collins are residents of Texas.

■ Still, we think the matter is not a foregone conclusion.  In oral argument of the case counsel for Gutierrez advised this court of factual matters not contained in the record that might affect the trial court's decision as to which law should apply.  The cause is therefore remanded to the trial court for full consideration of this point.  In this connection, we would emphasize that application of the "most significant relationship" analysis should not turn on the number of contacts, but more importantly on the qualitative nature of those contacts as affected by the policy factors enumerated in Section 6.

Should the trial court on remand decide that Texas has the most significant relationship and, hence, that Texas law should apply, the case may proceed to trial without problem.  In the event that the trial court decides Mexico has the most significant relationship, however, it will be faced with the same question currently before this court: should the court refuse to apply the laws of Mexico because of the dissimilarity doctrine?

## THE DISSIMILARITY DOCTRINE

The dissimilarity doctrine was first applied in Texas over nine decades ago.  In *Texas & P. Ry. Co. v. Richards*, 68 Tex. 375, 4 S.W. 627 (1887), this court refused to apply the laws of the state of Louisiana because of their dissimilarity to the laws of this state.  In *Mexican Nat. R. Co. v. Jackson*, 89 Tex. 107, 33 S.W. 857 (1896), the doctrine was invoked so as to refuse to

enforce Mexican law.[6] The *Jackson* opinion was grounded on notions of practicality, fairness, and public policy prevalent at that time. There was the practical problem of obtaining translations of Mexican statutes and judicial opinions. It was thought that this paucity of translated material might lead to incorrect interpretations of Mexican law by Texas courts, which would be unfair to the parties. Finally, several features of the laws of Mexico were considered to be so dissimilar to the laws of this state that they should not be enforced.

Although the early decisions appearing after *Jackson* evidenced a case-by-case analysis of the dissimilarity of the laws, it did not take long for the doctrine to acquire the status of a per se rule. Once the fact of dissimilarity was proven, the courts of this state, for the most part, unrelentingly followed the *Jackson* case and dismissed causes of action as, indeed, that opinion required them to do.[7]

Commentators have not looked with kindness upon the doctrine, calling it an "injustice," G. Stumberg, Principles of Conflicts of Laws 210 (3rd ed. 1963), a "blot on American legal history," 1 A. Ehrenzweig, Private International Law 122 (1972), and "[t]he ultimate horror," R. Weintraub, Commentary on the Conflict of Laws 225 (1971). *See also* S. Bayitch & J. Siqueiros, Conflict of Laws: Mexico and the United States 150–54 (1968); Hunsaker, *The Texas Dissimilarity Doctrine as Applied to the Tort Law of Mexico—A Modern Evaluation,* 55 Tex.L.Rev. 1281 (1977); Note, 20 Baylor L.Rev. 379 (1968); Paulsen, *Foreign Law in Texas Courts,* 33 Tex.L.Rev. 437, 439–50 (1955); Stumberg, *Conflict of Laws— Torts—Texas Decisions,* 9 Tex.L.Rev. 21, 29–36 (1930). It is time to reconsider the reasons behind the rule.

Access to translations of Mexican statutes and cases may have been a very real problem in the 1890's, but it is not such a problem today. The problem most commonly faced by the legal profession and the courts in this day is that of coping with the abundance of information rather than the lack of it. We note that counsel have been able to plead and prove the laws of Mexico in cases arising after *Jackson* almost without exception. Counsel was able to do so in the instant case.

The possibility of incorrectly interpreting and applying Mexican law rested in large

---

**6.** While reference will be made in this opinion to the laws of Mexico in general, it should be understood that Mexico has a federalist system of government under which each state has the sovereign authority to enact its own system of private law, subject to preemption by federal law. The Federal Civil Code only governs the federal district and territories, but most states model their codes after that of the federal code. As relevant to this lawsuit, the Civil Code of the State of Chihuahua does not materially differ from the Federal Code. *Cf.* Codigo Civil Para El Distrito Y Territorios Federales arts. 1910–1917 *with* Codigo Civil Para El E.L. Y S. de Chihuahua arts. 1795–1802. *See* H. Clagett & D. Valderrama, A Revised Guide to the Law & Legal Literature of Mexico (1973); Symposium, *Mexican Law for Norteamericanos,* 68 L.Lib.J. 395 (1975); Brinsmade, *Mexican Law—An Outline and Bibliography of English Source Materials Relating To Certain Aspects Thereof,* 36 Tex.B.J. 111 (1973); Ellis, *Civil Liability in Mexico,* 13 Fed.Ins.Counsel Q. 9 (Spring 1963).

**7.** *El Paso & Juarez Traction Co. v. Carruth,* 255 S.W. 159 (Tex.Com.App.1923, jdgmt adopted); *Cass v. Estate of McFarland,* 564 S.W.2d 107 (Tex.Civ.App.—El Paso 1978, no writ); *Ochoa*

*v. Evans,* 498 S.W.2d 380 (Tex.Civ.App.—El Paso 1973, no writ); *Carter v. Tillery,* 257 S.W.2d 465 (Tex.Civ.App.—Amarillo 1953, writ ref'd n. r. e.); *Banco de Mexico, etc. v. Da Camara,* 55 S.W.2d 631 (Tex.Civ.App.—San Antonio 1932, writ dism'd); *Compania Bancaria, etc. v. Border Nat. Bank,* 265 S.W. 599 (Tex.Civ.App.—El Paso 1924, writ dism'd); *De Herrera v. Texas Mexican Ry. Co.,* 154 S.W. 594 (Tex.Civ.App.—San Antonio 1913, writ ref'd); *Jones v. Mexican Cent. Ry. Co.,* 68 S.W. 186 (Tex.Civ.App.—1902, writ ref'd); *Slater v. Mexican Nat'l R. R.,* 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900 (1904); *Ramirez v. Autobuses Blancos Flecha Roja, S.A. de C.V.,* 486 F.2d 493 (5th Cir. 1973); *Smith v. General Motors Corporation,* 382 F.Supp. 766 (N.D.Tex.1974), aff'd mem., 526 F.2d 804 (5th Cir. 1976). *See also Garza v. Greyhound Lines, Inc.,* 418 S.W.2d 595 (Tex.Civ.App.—San Antonio 1967, no writ); *Hudson v. Continental Bus System, Inc.,* 317 S.W.2d 584 (Tex.Civ.App.—Texarkana 1958, writ ref'd n. r. e.); *Mendiola v. Gonzales,* 185 S.W. 389 (Tex.Civ.App.—San Antonio 1916, no writ); *Mexican Cent. Ry. Co. v. Mitten,* 36 S.W. 282 (Tex.Civ.App.—1896, writ ref'd).

part on the availability of adequate translations. As that argument goes, so does this one. Furthermore, the members of this state's judiciary are fully capable of comprehending and applying laws of other jurisdictions. In point of fact, there are some Texas cases in which various aspects of Mexican law have been given controlling effect. *See Ochoa v. Evans*, 498 S.W.2d 380 (Tex.Civ.App.—El Paso 1973, no ˙ writ); *Apodaca v. Banco Longoria, S.A.*, 451 S.W.2d 945 (Tex.Civ.App.—El Paso 1970, writ ref'd n. r. e.). Even a casual survey of decisions from other jurisdictions indicates that courts elsewhere than Texas have experienced no great difficulty in applying foreign laws which on their face appear to be no less exotic than those presented here.[8] We note especially the decision of *Victor v. Sperry*, 163 Cal.App.2d 518, 329 P.2d 728 (1958), wherein the California court gave effect to the laws of Mexico in a tort action similar to the instant case. There is no reason to believe that Texas courts are any less capable in this regard than courts elsewhere. Professor Leflar's conclusion seems sound: "Few states and few civilized nations today have judicial remedies that cannot be approximated in any American state." Leflar, *supra*, § 50.

■ Finally, there is the question of public policy. Texas courts will not enforce a foreign law that violates good morals, natural justice or is prejudicial to the general interests of our own citizens. *Castilleja v. Camero*, 414 S.W.2d 424 (Tex.1967). This is a limitation recognized by all jurisdictions. At the time of the *Jackson* opinion, Mexi-

co's tort laws were inextricably intertwined with its penal sanctions. The remedial provisions of the law were quite different from those of this state. Since that time, however, much has changed. Mexico adopted a new Constitution in 1917, revised its Civil Code in 1928, and its Penal Code in 1931. As one writer has noted: "One may safely conclude that the *Jackson* holding of dissimilarity rested on a tort system that largely no longer exists." Hunsaker, *supra*, at 1297.

■ It is true that the laws of Texas and Mexico still differ in several aspects, not all of which need be mentioned here. However, these differences by no means render the laws of Mexico violative of public policy. Each must be considered on its own merits. Three dissimilarities were proven in the record before us and have been noted in most recent cases. First, there are the limitation-of-damages statutes which index a plaintiff's recovery to the prevailing wage rates set by Mexican labor law. These provisions have the effect of substantially reducing a plaintiff's recovery compared to that which he might expect to receive in a United States court. Secondly, Mexican law does not recognize pain and suffering as an element of damages, contrary to the laws of Texas and other jurisdictions in this country. Thirdly, Mexican law authorizes recovery for moral reparations which include injuries to a plaintiff's reputation, dignity, or honor. The award is within the discretion of the judge and may not exceed one third of the other damages awarded. Codigo Civil Para El Distrito Y Territorios

---

8. *Heaney v. Purdy*, 29 N.Y.2d 157, 324 N.Y.S.2d 47, 272 N.E.2d 550 (1971) (applying Canadian law of false arrest); *Frummer v. Hilton Hotels International, Inc.*, 60 Misc.2d 840, 304 N.Y.S.2d 335 (1969) (applying England's law of comparative negligence); *Pringle v. Gibson*, 135 Me. 297, 195 A. 695 (1937) (applying New Brunswick's law of negligence); *Rauton v. Pullman Co.*, 183 S.C. 495, 191 S.E. 416 (1937) (applying Mexican contract law); *Kalmich v. Bruno*, 553 F.2d 549 (7th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977), *on remand*, 450 F.Supp. 227 (N.D.Ill.E.D.1978) (applying Yugoslavian law of conversion); *Tramontana v. S. A. Empresa de Viacao Aerea Rio Grandense*, 121 U.S.App.D.C. 338, 350 F.2d 468

(1965) (applying Brazilian limitations on damages); *Theoktistou v. Panama R. Co.*, 6 F.2d 116 (5th Cir.), *cert. denied*, 269 U.S. 569, 46 S.Ct. 25, 70 L.Ed. 416 (1925) (applying Panamanian law of negligence); *Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.*, 422 F.Supp. 405 (N.D.Ill.E.D.1976) (applying Mozambique's law of negligence); *Papizzo v. O. Robertson Transport, Ltd.*, 401 F.Supp. 540 (E.D.Mich.S.D.1975) (applying Canadian law of negligence); *Quandt v. Beech Aircraft Corporation*, 317 F.Supp. 1009 (D.Del.1970) (applying Italian law of negligence); *Manos v. Trans World Airlines, Inc.*, 295 F.Supp. 1170 (N.D.Ill. E.D.1969) (applying Italian law of negligence).

Federales art. 1916; Codigo Civil Para El E.L. Y S. de Chihuahua art. 1801. As noted above, the mere fact that these aspects of the law differ from ours does not render them violative of public policy. Furthermore, there is nothing in the substance of these laws inimical to good morals, natural justice, or the general interests of the citizens of this state.

We therefore hold that for this trial, and henceforth in the trial of all actions, the dissimilarity doctrine will no longer be recognized as a defense.

The judgments of the court of civil appeals and the trial court are reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.