Criminal Case Template












COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS


LESLIE WARREN PERKINS AND
DOROTHY ALMA PERKINS, AS
SURVIVING PARENTS AND
EXECUTORS OF THE ESTATE OF
SANDRA DOROTHY FREEMAN,
DECEASED, MARCELLUS
ALBISSER, ALEX GREENAWAY,
AND JAMES TUFTS,


 Appellants,


v.


DYNASTY GROUP AUTO,


 Appellee.

§


§


§


§


§


§


§


§

No. 08-01-00493-CV


Appeal from the


327th Judicial District Court


of El Paso County, Texas


(TC# 99-643)

 

M E M O R A N D U M O P I N I O N



 This is an appeal from a summary judgment. For the reasons stated, we affirm.


I. SUMMARY OF THE EVIDENCE


A. Parties

 Appellants Leslie Warren Perkins and Dorothy Alma Perkins (the "Perkins") are the
surviving parents and executors of the estate of Sandra Dorothy Freeman ("Freeman"). The
Perkins are residents of Victoria, Australia. Appellant Marcellus Albisser ("Albisser") is a
resident of Switzerland. Appellant Alex Greenaway ("Greenaway") is a resident of England. 
Appellant James Tufts ("Tufts") is a resident of California. Defendant below Martin
Widgren ("Widgren") is a resident of Sweden. (1) Appellee Dynasty Group Auto ("Dynasty")
is a "D/B/A" of Hoi Tak Wong, who is a resident of California. At one time or another,
Dynasty had offices in Houston, San Antonio, New York, Orlando, but it was headquartered
in Los Angeles, California. 

B. Facts

 This case arises out of an automobile accident. Dynasty Group Auto was in the
business of purchasing automobiles in New York, Florida, Texas, California, Virginia, and
Massachusetts and transporting them to Los Angeles, California, for resale. The vehicles
were then moved by transportation truck or pursuant to the "drive-away" program, whereby
individuals would drive the cars for free to Los Angeles. 

 On January 28, 1998, Albisser, Greenaway, and Widgren went to Dynasty's office in
Florida and signed up to drive a 1994 Toyota Previa Minivan from Florida to California. 
Upon returning to the hotel where Albisser, Greenaway, Widgren, Freeman, and Tufts were
staying, Freeman indicated that she wanted to join them on the trip and wished to be dropped
off at her relatives' home along the way. Tufts wanted to join them because he wanted to
return home to California. 

 The group departed Miami, Florida later that day. They drove straight through the
first night and stopped the next day in New Orleans, where they spent the night in a hotel. 
They drove to San Antonio the next day, where they stopped to have some food and play pool
at the River Walk. Greenaway and Tufts each had a beer. The group left San Antonio that
evening and drove through the night. The one-vehicle accident occurred twelve miles east
of Sierra Blanca, Texas, at approximately 7:30 a.m. Texas Highway Patrolman James Jones
investigated the accident and found no specific cause. He stated that all of the passengers
were ejected from the vehicle. Jones thought that the driver either fell asleep or was
inattentive, but conceded that there could have been some other cause. 

 The injured parties were transported to either R. E. Thomason Hospital or William
Beaumont Army Medical Center in El Paso. Freeman was transported to Thomason
Hospital, where she died the following day, February 1, 1998. The others were treated for
several days. 

C. Procedural History

 Appellants sued Dynasty and Widgren in Texas, seeking damages for personal injuries
and wrongful death. (2) Dynasty filed a motion for summary judgment, in which it argued that
there was no evidence that established an employment relationship between it and Widgren,
and because there was no evidence that Dynasty failed to maintain the vehicle, failed to
properly screen the drivers, failed to properly advise passengers of the quality, skill, and
experience of the drivers, failed to properly inspect the vehicle, failed to properly instruct the
driver, or engaged in any other acts of negligence. Appellants filed a response to Dynasty's
motion for summary judgment and filed a motion for partial summary judgment. Dynasty
then filed a supplemental motion for summary judgment and a response to Appellant's
motion for partial summary judgment. Appellants filed their response to Dynasty's
supplemental motion. 

 The trial court granted Dynasty's motion for summary judgment and found that
Dynasty was not Widgren's employer at the time of the accident, that Dynasty did not
commit any independent acts of negligence, that Widgren was not Dynasty's agent at the
time of the accident, and that Texas law controls, thus Dynasty is not vicariously liable under
Florida's "dangerous instrumentality" doctrine. In its final judgment, the trial court noted
that the parties entered into the following stipulation as to the findings of liability against
Widgren and that Appellants be awarded certain damages from him:

1) That Widgren was negligent in operation of a motor vehicle, that his
negligence caused the accident of January 31, 1998, and that his negligence
was the proximate cause of Appellants' damages;


2) Perkins be awarded judgment over and against Widgren in the sum of
Three Hundred Thousand Dollars ($300,000) for mental anguish, medical
and funeral expenses and loss of consortium;


3) Greenaway be awarded judgment over and against Widgren in the sum
of One Hundred and Fifty Thousand Dollars ($150,000) for physical pain
and mental anguish;



4) Albisser be awarded judgment over and against Widgren in the sum of
Sixty Thousand Dollars ($60,000) for physical pain and mental anguish; and

 

5) Tuft be awarded judgment over and against Widgren in the sum of Sixty
Thousand Dollars ($60,000) for physical pain and mental anguish. 


The final judgment also noted that the stipulation as to the findings and award of damages
against Widgren would not preclude Appellants from pursuing their appeal of the court's
order in which it applied Texas law over Florida law as to their claims against Dynasty. This
appeal follows.

II. DISCUSSION


 Appellants present five issues on appeal attacking the granting of Dynasty's summary
judgment, the denial of their summary judgment, and the application of Texas law rather than
Florida law. We must first determine if Texas or Florida law applies to the facts of this case. 

A. Choice of Law Standard of Review

 Which State's law governs an issue is a question of law for the court to decide.
Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex.1984). Therefore, we must
review the trial court's decision to apply Texas law in this case de novo. Minnesota Mining
& Mfg. Co. v. Nishika Ltd., 955 S.W.2d 853, 856 (Tex. 1996). But determining the state
contacts to be considered by the court in making this legal determination involves a factual
inquiry. Parra v. Larchmont Farms, Inc., 932 S.W.2d 68, 74 (Tex. App.--El Paso 1995),
rev'd on other grounds, 941 S.W.2d 93 (1997) (per curiam). Moreover, a movant for
summary judgment seeking to have the law of another state applied must satisfy its burden
of proof with respect to fact questions necessary to the choice of law decision. The movant
for summary judgment has the burden of showing that there is no genuine issue of material
fact, and that it is entitled to judgment as a matter of law. Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548 (Tex. 1985). In deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the nonmovant will
be taken as true. Id. at 548-49. Every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in its favor. Id. at 549.

 Since 1979, the Texas Supreme Court has applied the Restatement's "most significant
relationship" test to decide choice of law issues. Restatement (Second) of Conflict of
Laws §§ 6, 145 (1971); Duncan, 665 S.W.2d at 420-21; Gutierrez v. Collins, 583 S.W.2d
312, 318 (Tex. 1979). Section 6 of the Restatement sets out the following general factors
relevant to the choice of law: 

(a) the needs of the interstate and international systems, 


(b) the relevant policies of the forum, 


(c) the relevant policies of other interested states and the relative interests
of those states in the determination of the particular issue, 


(d) the protection of justified expectations, 


(e) the basic policies underlying the particular field of law, 


(f) certainty, predictability and uniformity of result, and 


(g) ease in the determination and application of the law to be applied. 



Restatement (Second) of Conflict of Laws § 6(2) (1971); Gutierrez, 583 S.W.2d at
318-19. Section 145 contains the following factual matters to be considered when applying
these principles to a tort case:

(a) the place where the injury occurred, 


(b) the place where the conduct causing the injury occurred, 


(c) the domicil, residence, nationality, place of incorporation and place of 

business of the parties, and 


(d) the place where the relationship, if any, between the parties is centered.


Restatement (Second) of Conflict of Laws § 145(2) (1971); Gutierrez, 583 S.W.2d at
319. We next examine the summary judgment evidence regarding each of the factors.

B. Application of Choice of Law Principals

 First, the accident (injury) occurred in Texas. Comment (e) of Section 145 provides
that in personal injuries cases, the place where the injury occurred plays an important role in
the selection of the state of the applicable law. Restatement (Second) of Conflict of
Laws § 145 cmt. e (1971). Likewise, Section 146 of the Restatement (Second) of Conflict
of Laws provides: 

In an action for a personal injury, the local law of the state where the injury
occurred determines the rights and liabilities of the parties, unless, with
respect to the particular issue, some other state has a more significant
relationship under the principles stated in § 6 to the occurrence and the
parties, in which event the local law of the other state will be applied.


Restatement (Second) of Conflict of Laws §146 (1971). 


 Next, the conduct causing the injury--Widgren's alleged negligence in operating the
vehicle--occurred in Texas. Appellants argue that the conduct of Dynasty in renting or
loaning its vehicle to Albisser, Greenaway, and Widgren, which occurred in Florida, is more
relevant than where the injury and the conduct causing the injury occurred. We disagree. 
In Cates v. Creamer the Federal Court addressed this same issue. Cates ex rel. Cates v.
Creamer, 2001 WL 1196058 (N.D. Tex. August 7, 2001)(holding that the conduct causing
the injury was the act of the driver falling asleep at the wheel in Texas, not the rental of the
vehicle in Florida). In that case, Plaintiff sustained injuries from a collision that occurred in
Texas. That court looked at where the conduct causing the injury arose. The Plaintiff argued
that the conduct arose in Florida where the car was rented. The court in Cates disagreed,
finding that "[t]he conduct leading to the injuries was [the driver] falling asleep while driving
and therefore crashing into Plaintiff." Similarly in this case, the conduct causing the injury
was Widgren falling asleep or being inattentive. 

 The next factor, the domicile residence, nationality, place of incorporation and place
of business of the parties, does not favor either Texas or Florida law. None of the parties
resided in Texas or Florida. While Dynasty had offices in Houston, San Antonio, New York,
Orlando, it was headquartered in Los Angeles, California. (3) The Perkins are residents of
Victoria, Australia. Appellant Marcellus Albisser ("Albisser") is a resident of Switzerland. 
Appellant Alex Greenaway ("Greenaway") is a resident of England. Appellant James Tufts
("Tufts") is a resident of California. Defendant below Martin Widgren ("Widgren") is a
resident of Sweden. Neither Texas, nor Florida have a special interest in this regard.
California would be the state with the most interest since Appellee and one Appellant are
residents of that state. 

 Finally, the place where the relationship between the parties is centered is more
difficult to determine. The relationship between Dynasty and Albisser, Greenaway, and
Widgren originated in Florida and was to conclude in California. Freeman and Tufts were
acquaintances of Albisser, Greenaway, and Widgren, after meeting them at a hotel in Florida.
Freeman and Tufts did not visit Dynasty's Florida office; they merely "tagged along" with
their friends. The Perkins had no relationship with Florida or Dynasty prior to the accident.
The overall relationship between the parties consisted of an accident that occurred in Texas. 

 Thus, in viewing the factual contacts in their entirety, the application of Texas law
seems appropriate. We must, however, analyze these factual contacts in light of their impact
upon the policy factors set out in Section 6 of the Restatement. Gutierrez, 583 S.W.2d at
319. Comment (e) of Section 6 of the Restatement pronounces that "[i]f the purposes sought
to be achieved by a local statute or common law rule would be furthered by its application
to out-of-state facts, this is a weighty reason why such application should be made."
Restatement (Second) of Conflict of Laws § 6 cmt. (e). This comment speaks to
considerations (b) and (e), the relevant policies of the forum and the basic policies underlying
the particular field of law. Texas courts have emphasized these two factors in determining
which forum has the "most significant relationship" to the claim at issue. See e.g. Duncan,
665 S.W.2d at 421 (governmental interest of each forum is the "beginning point" for
determining most significant relationship); Seth v. Seth, 694 S.W.2d 459, 463 (Tex.
App.--Fort Worth 1985, no writ) (relevant policies of the forum is most critical consideration
in determining most significant relationship). 

 Appellants argue that Florida has a significant interest in promoting tourism and
adequately protecting tourists in their dealings with companies in Florida and from any
resulting harm. We agree that Florida has a strong interest in protecting tourists in their
dealings with companies in Florida, however, the facts in the instant case do not give rise to
such an interest. The act in this case is a car accident that took place in Texas. It is regulated
by Texas law inasmuch as Texas regulates drivers in its highways. We see no reason why
Texas would be interested in deferring to Florida for regulation of the act that caused the
injury. See Vizcarra v. Roldan, 925 S.W.2d 89, 92 (Tex. App.--El Paso 1996, no pet.).
Furthermore, this action is a tort action arising out of the car accident that occurred in Texas
rather than a contract dispute involving the terms of the agreement and therefore, the place
of the agreement's (Florida) choice of law does not apply. See Smith v. Foodmaker, Inc., 928
S.W.2d 683, 686 (Tex. App.--Fort Worth 1996, no writ). Having found that the trial court
did not err in applying Texas law, we need not address whether Florida would impose
liability under the Dangerous Instrumentality Doctrine. Issues Number Three, Four and Five
are overruled. 

 In Issues Number One and Two, Appellants contend that the trial court erred in
granting defendant's Motion for Summary Judgment and in not imposing liability for
Appellants' damages against Appellees. Under Rule 38.1(h) of the Texas Rules of Appellate
Procedure, an Appellant's brief must contain a clear, concise argument for the contentions
made, including appropriate citations to authorities and to the record. Tex. R. App. P.
38.1(h). Appellants failed to support these particular issues with legal authority and/or any
reference to the record. An issue not supported by authority is waived. Walton v. Phillips
Petroleum Co., 65 S.W.3d 262, 276 (Tex. App.--El Paso 2001, pet. denied). Similarly, an
issue not supported by any references to the record is waived. In re D.S., 76 S.W.3d 512, 516
(Tex. App.--Houston [14th Dist.] 2002, no pet.). Based on this authority, Appellants have
waived their argument as to Issues Number One and Two. The trial court's judgment is
affirmed. 

November 25, 2003

 

 
 STEPHEN F. PRESLAR, Chief Justice (Ret.)


Before Panel No. 5

Preslar, C.J.(Ret.), Larsen and Chew, JJ.

Preslar, C.J. (Ret.) sitting by assignment


1. Widgren did not appeal the judgment entered against him.
2. Appellees filed a Motion for Consolidation of Actions for the purpose of consolidating James Tufts' suit
against Appellees, which was pending in the County Court at Law No. Five in El Paso County, with the Perkins',
Albisser's, and Greenaway's suit against Appellees. The trial court granted the motion to consolidate. 
3. Neither party sought to invoke the laws of California.