In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00334-CV
_____

TOYOTA MOTOR COMPANY, Appellant

V.

LINDA COOK, SANFORD JONES, JAMES THOMAS LYLE, GARY
GRAY, EAST TEXAS EDUCATIONAL INSURANCE ASSOCIATION,
NEW YORK MARINE AND GENERAL INSURANCE COMPANY,
Appellees

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-184,121**

**OPINION**

In this agreed permissive interlocutory appeal, Toyota Motor Corporation

(Toyota) appeals the trial court's grant of Plaintiffs' Linda Cook, Sandford Jones,

James Thomas Lyle, Gary Gray, East Texas Educational Insurance Association, and

New York Marine and General Insurance Company Motion to Apply Texas Law.

*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (West Supp. 2017). In a single

issue, Toyota asks whether the trial court should apply Texas or Mexico's law to Appellees' claims against Toyota.

## I. Background

This is a case arising out of an automobile accident that occurred in Mexico. Appellees are either teachers or family members of teachers, who are all residents of Texas. Appellees and some of their family members traveled to Mexico as part of a Spanish immersion program. After arriving, Plaintiffs arranged on their own, through the Mexican-owned hotel where they stayed, a tour of caves outside Tolantongo, State of Hidalgo, Mexico. A licensed Mexican national provided transportation and operated a Toyota Hiace van, licensed and registered in Mexico. In Japan, Toyota designed and manufactured the Hiace model for the Mexican market, and Toyota imported the van directly to Mexico where it was sold and placed into the stream of commerce. There are no records indicating the Hiace van involved in the accident had ever been in Texas or the United States. The Hiace model, in fact, was never intended for use in or marketed by Toyota in the United States.

While en route to the caves, the driver was negotiating an unpaved descending switchback mountain roadway when the van suddenly veered off the roadway, flipped and rolled down the mountainside, ejecting several passengers. The accident killed three teachers and injured other occupants of the van, some seriously. Several

2

Appellees received medical treatment in Mexico and later in Texas. The Mexican government—the Attorney General for the State of Hidalgo—extensively investigated the accident. Following the investigation, they held the driver of the van criminally responsible for the accident.

On appeal, Appellees assert this is a product liability case wherein they allege that Beaumont ISD "teachers and family members were injured or killed as a result of a product (a van) which was defectively designed, manufactured and marketed by Toyota Motor Co." A review of the record reveals claims for negligence, strict product liability, and wrongful death. Appellees allege that teachers Dorothy Gray, Denise Wenzel and Mary Jones died as a result of the crash, and survivors Gary Gray, Paul Gray, and Chris Gray (collectively "Gray Survivors") suffered significant injuries in the accident. After receiving initial treatment in Mexico, the Gray Survivors received medical treatment in Texas. In addition to claims of negligent design, marketing, and manufacturing, Appellees assert that Toyota is "strictly liable to plaintiffs for designing, manufacturing and/or placing into the stream of commerce the Hiace motor vehicle, which was unreasonably dangerous and defective as designed, manufactured and marketed by defendant for its reasonably foreseeable uses at the time it left the control of [Toyota]."

Multiple lawsuits were filed in the District Courts of Jefferson County, Texas, seeking to recover damages incurred as a result of the accident.[1] All have been consolidated in this appeal. After nonsuiting the Mexican van driver and the Mexican hotel owner, Plaintiffs are proceeding solely against Toyota. Plaintiffs moved for application of Texas law to their claims, while Toyota opposed the motion and requested the application of Mexico's law. The trial court granted the Appellees' motions to apply Texas law.

All parties agree that (1) the trial court's choice of law ruling involves a controlling question of law, (2) there exists a substantial difference of opinion on the trial court's ruling, and (3) an immediate appeal will materially advance the ultimate termination of the litigation. The trial court authorized a permissive interlocutory appeal, and we granted the petition for permissive appeal.

---

[1] The record reflects that Linda Cook asserted causes of action for negligence, product liability, and strict liability against Toyota. Cook sought compensatory and exemplary damages. The Gray Survivors brought claims for injuries they sustained in the crash in addition to a cause of action for the wrongful death of Dorothy Gray. Their live pleading includes claims for negligence, product liability, strict liability, and wrongful death. The Gray Survivors seek compensatory damages and bystander damages, but they do not seek exemplary damages. The suit filed by the Jones Survivors is pending in another district court, which the trial court consolidated for purposes of discovery. We do not have their live petition but will assume their claims are similar to those of the Gray Survivors with the exception of the bystander claims since the Jones family members were not present when the accident occurred.

## II. Standard of Review

Determining which state's law governs an issue is a question of law for the courts. *Enter. Prods. Partners, L.P. v. Mitchell*, 340 S.W.3d 476, 479–480 (Tex. App.—Houston [1st Dist.] 2011, pet. granted) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000)). Therefore, we review a trial court's decision to apply Texas law *de novo*. *See Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996); *Mitchell*, 340 S.W.3d at 480.

## III. Choice of Law Generally

Texas applies the most significant relationship test outlined in the Restatement (Second) of Conflict of Laws to determine choice of law issues. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) (holding that "in the future[,] all conflicts cases sounding in tort will be governed by the 'most significant relationship' test as enunciated in Sections 6 and 145 of the Restatement (Second) of Conflicts"); *see also Torrington*, 46 S.W.3d at 848; *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000); RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145 (AM. LAW INST. 1971). Under this approach, the laws of a single state do not necessarily govern all substantive issues; accordingly, we consider each issue separately and apply the state law having the most significant relationship to the

5

issue.[2] *See Bain v. Honeywell Int'l, Inc.*, 257 F.Supp.2d 872, 875 (E.D. Tex. 2002). We only undertake a choice of law analysis if a conflict of law exists that affects the outcome of an issue. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984). The parties agree that an actual conflict exists between the laws of Mexico and the laws of Texas, but they do not identify the separate substantive issues involved. *See Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 259 (Tex. App.—San Antonio 1999, pet. denied) (holding that the first step of our analysis is to "[i]nitially . . . identify the conflict of law which would necessitate the trial court to decide a choice of law issue"). Accordingly, we look to the allegations contained in Appellees' live pleadings to determine the substantive issues and analyze the choice of law issues applying the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws. *See Torrington*, 46 S.W.3d at 848; *Gutierrez*, 583 S.W.2d at 318; RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145.

Section 6 of the Restatement (Second) outlines the general choice of law factors courts should consider, including:

(a) the needs of the interstate and international systems,

---

[2] The "process of applying the laws of different states to discrete issues within the same case" is known as "depecage." *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 534 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citation omitted).

6

(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in determination and application of the law to be applied.

*Torrington*, 46 S.W.3d at 848 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)); *see also Hughes*, 18 S.W.3d at 205. Additionally, in tort cases we consider the section 145 contacts, which include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2); *see also Torrington*, 46 S.W.3d at 848. In deciding choice of law issues, the number of contacts is not determinative, rather courts must examine the contacts in light of state policies underlying the specific substantive issue. *Torrington*, 46 S.W.3d at 848; *Duncan*, 665 S.W.2d at 421.

In *Gutierrez,* the Texas Supreme Court explained that certain dissimilarities in Mexican law, including damages, limitation statutes, indexing a plaintiff's recovery to the prevailing wage rates set by Mexican labor law, absence of pain and suffering damages, and the allowance of moral reparations damages capped at one

7

third of the other damages awarded, did not necessarily render them violative of public policy. *Gutierrez*, 583 S.W.2d at 321–22. These are some of the differences that Appellees complain of in the case before us. The Court specifically noted that "there is nothing in the substance of these laws inimical to good morals, natural justice or the general interests of the citizens of this state." *Id.* at 322.[3]

We cannot make a blanket determination that the law of Texas or Mexico applies to the entire case; rather, we must determine which state has the most significant relationship to each substantive issue in our choice of law analysis. *See Torrington*, 46 S.W.3d at 848 (citations omitted) ("[W]e must evaluate the contacts in light of the state policies underlying the particular substantive issue."); *Hughes*, 18 S.W.3d at 205 ("[T]he court of appeals determined that Texas has the most significant relationship to the case and that therefore Texas law should apply to all

---

[3] *In re Pirelli Tire, L.L.C.*, a *forum non conveniens* case cited extensively by Appellant, involved a product liability action by surviving family members who were Mexican residents. 247 S.W.3d 670 (Tex. 2007). The product at issue was a tire manufactured by the defendant and put on a vehicle purchased in Texas and then later taken to Mexico where it was maintained and driven. *Id.* at 673. The defendant manufacturer was incorporated in Delaware and had its principal place of business in Georgia. *Id.* The plaintiffs there argued that Mexico did not provide an adequate forum, because "it [did] not afford a cause of action for strict liability" and that "Mexican law [did] not provide for survival damages and severely restricts damages for death." *Id.* at 678. The Court noted that the Mexican law was not rendered inadequate and the fact that "the substantive law of an alternative forum may be less favorable to the plaintiff is entitled to little, if any, weight." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 246–51 (1981)).

8

issues. But the *Restatement* requires the court to consider which state's law has the most significant relationship *to the particular substantive issue to be resolved*."); *see also Bain*, 257 F.Supp.2d at 875. "The Restatement methodology requires a separate conflict-of-laws analysis for each issue in a case." *Alarcon v. Velazquez*, 552 S.W.3d 354, 360 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (citing *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 70 (Tex. App.—Houston [14th Dist.] 2004, no pet.)); *BDO Seidman, LLP v. Bracewell & Patterson, LLP*, No. 05-02-00636-CV, 2003 WL 124829, at *2 (Tex. App.—Dallas Jan. 16, 2003, pet. denied) (mem. op.) ("[T]he substantive law applicable to the underlying tort action is not automatically applicable to a defendant's contribution claim."). In addressing choice of law issues, "it is necessary for the court to analyze liability and damages separately." *Bain*, 257 F.Supp.2d at 875 (citation omitted).

### IV. Liability

**A. Restatement (Second) Section 145 Factors**

**1. The place where the injury occurred**

Both parties undisputedly agree the accident occurred in Mexico. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(a). As explained above, the van involved in the accident was directly imported from Japan to Mexico, sold in Mexico to a Mexican national, and operated exclusively in Mexico. Therefore,

9

Mexico was not a fortuitous location where the accident occurred.[4] These facts support the application of Mexico's law to the liability issues.

### 2. The place where the conduct causing the injury occurred

The location where the conduct giving rise to the injury occurred is either Japan, where the Toyota Hiace was designed and manufactured for the Mexican market, or Mexico, where the van entered the stream of commerce and remained until the accident. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(b). In its investigation, Mexico faulted the conduct of the Mexican driver and Mexican hotel owner for causing or contributing to the injuries or deaths. This conduct occurred in Mexico. *See id.* No party argues that Japan's laws should apply. Thus, this factor favors the application of Mexico's laws.

### 3. The domicile, residence, nationality, place of incorporation, and place of business of the parties

Plaintiffs are all domiciled in Texas. The Texas Toyota affiliated corporations did not design, manufacture, buy, or sell the Toyota Hiace van. Toyota's relevant domicile is Japan. While Toyota does business in Texas, the vehicle at issue had no

---

[4] This is unlike a plane crash case where courts have determined the fortuitous location of the crash decreased this factor's significance. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000) (citation omitted).

10

relationship to Texas. These factors are at most neutral. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(c).

### 4. The place where the relationship, if any, between the parties is centered

The fourth factor—the place where the relationship of the parties is centered—favors the application of Mexico's law. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(d). Plaintiffs did not arrange and obtain transportation for the cave excursion until they were in Mexico. *Cf. Trailways, Inc. v. Clark*, 794 S.W.2d 479, 485–86 (Tex. App.—Corpus Christi 1990, writ denied) (noting that the bus tickets to Mexico where the accident occurred were purchased in Texas and the accident victims boarded the bus in Texas). With respect to Toyota, it was not until they climbed into the van in Mexico that any relationship existed between Plaintiffs and Toyota. *See Vizcarra v. Roldan*, 925 S.W.2d 89, 90 (Tex. App.—El Paso 1996, no writ) ("Because the record reflects no relationship whatsoever between any plaintiff and any defendant until the accident, the entire relationship between the [parties] consists of an accident that occurred in Mexico."); *see also Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1057 (Del. 2015) ("[T]he fourth contact points to Mexico, where the helicopter had been since 1979, where the fitting was installed, and where the victims took off for their ill-fated journey.").

11

### 5. Balancing of section 145 factors

The factual contacts under section 145 overall favor the application of Mexico's law. Thus, the presumption of applying the law of the location of the alleged tort is not rebutted. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS §§ 145, 146. We must, however, analyze these factual contacts in light of their impact upon the policy factors set out in section 6 of the Restatement. *Gutierrez*, 583 S.W.2d at 319.

## B. Restatement (Second) Section 6 Policy Factors

Plaintiffs focus on two main themes throughout their application of the policy factors to argue that Texas law should be applied. Particularly, Plaintiffs contend Mexico's approach in determining liability—which fails to provide for strict liability or bystander causes of action—leaves them with an inadequate remedy. As to Mexico's lack of strict liability law, Plaintiffs also assert that as Texas residents, Texas has a stronger policy interest than Mexico in protecting its residents by controlling corporate action in areas such as the manufacture of defective products. We agree Texas has a strong interest in protecting its residents to allow recovery of adequate compensation for torts committed against them and in avoiding injury resulting from defective products to Texas residents. But, that interest is not dispositive because other policy factors and considerations must also be examined.

12

**1. The needs of the interstate and international systems**

According to the Restatement, analyzing the factors to determine the applicable law "should seek to further harmonious relations between states and to facilitate commercial intercourse between them." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. d. Comment *d* indicates that this policy factor is "[p]robably the most important" "to make the interstate and international systems work well." *Id.*; *see also Bell Helicopter*, 113 A.3d at 1057.

In a *forum non conveniens* case, the Texas Supreme Court stated that "[t]he safety of Mexican highways and products within the country's borders are also Mexican interests." *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 679 (Tex. 2007) (granting mandamus relief from the district court's denial of a *forum non conveniens* motion seeking dismissal of a personal injury case involving Mexican plaintiffs arising from an accident in Mexico). Mexico extensively investigated the accident at issue. Applying Texas law to tort claims that arose and occurred in Mexico would work to undermine Mexico's sovereignty and ability to regulate safety on its highways, including the vehicles used to transport their occupants.

**2. The relevant policies of the forum and other interested states and the basic policies underlying the particular field of law**

This Court must also consider the relevant policies of Texas and Mexico together with the basic policies underlying the particular field of law because of their similarities. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(b), (c), (e).

Plaintiffs argue based on policy interests of Texas and because Mexico's law fails to provide certain causes of action and methods of recovery, Texas law should apply. However, if the foreign law is not "against good morals or natural justice" or "prejudicial to the general interest" of Texas residents, mere differences between Texas law and foreign law would not render the foreign law so contrary to Texas public policy that it should not be enforced. *California v. Copus*, 309 S.W.2d 227, 232 (Tex. 1958) (citations omitted); *see also Gutierrez*, 583 S.W.2d at 321.

For example, the failure of Mexico to recognize a strict liability cause of action would not render Mexico's law inadequate in and of itself. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) (concluding that despite Scottish courts not permitting strict liability claims, and potential damage awards being potentially smaller, no danger exists for the claimants being deprived of any remedy or unfair treatment). Relying upon *Piper Aircraft*, the Fifth Circuit has held that both Mexico's lack of a strict liability theory of recovery and limitations on damage recovery did not render Mexico's laws inadequate in a *forum non conveniens* case.

14

*See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 381, 383 (5th Cir. 2002) (citing *Piper Aircraft*, 454 U.S. at 255).

According to David Lopez, Plaintiffs' legal expert on Mexico's law, while Mexico's law does not provide for a strict liability cause of action, Mexico does allow for the recovery of damages caused by defective products under negligence principals. Lopez explained the damages available under Mexico's law and how to calculate compensation for such damages. While "[i]t is true that the laws of Texas and Mexico still differ in several aspects," including the limitation of damages, "the mere fact that these aspects of the law differ from ours does not render them violative of public policy." *Gutierrez*, 583 S.W.2d at 321–22.

Mexico's underlying policy interest in adopting laws restricting tort causes of action and recovery is to protect Mexican businesses and citizens from excessive liability claims. *Gonzalez*, 301 F.3rd at 381–82. Mexico investigated this accident and concluded that the van's driver was criminally responsible. Thus, under the facts of this case, we conclude that Mexico has a policy interest in applying its law.

Plaintiffs also argue that Texas law should be applied because Mexico has no interest in protecting Texas residents by ensuring their safety while in Mexico. Appellees claim that because Toyota does business in Texas, and a considerable amount of Mexico's tourism results from Texas residents, Toyota should employ the

15

same U.S. safety standards with respect to its vehicles marketed in Mexico. However, the business conducted by Toyota in Texas is completely unrelated to Plaintiffs' causes of action in this case. The record reflects the van involved in the accident was not designed, manufactured, sold, used, or even intended for any market other than Mexico.

The tort at issue in this case does not involve any product that entered the stream of commerce from or in Texas. Texas law, including the application of U.S.'s strict automobile safety standards, does not apply. *See Crisman v. Cooper Indus.*, 748 S.W.2d 273, 277–78 (Tex. App.—Dallas 1988, writ denied) ("[W]e conclude that the fact that appellee conducts some part of its business, unrelated to the subject matter of the present claim, in Texas and maintains its principal place of business in Texas carries no weight in our determination of whether Texas . . . substantive law is applicable[.]"). Mexico, the market for which the van was made, has a greater interest in having its laws applied. *See Bell Helicopter*, 113 A.3d at 1055–56 (explaining modern choice of law considerations suggest the jurisdiction where the product is marketed has the greatest interest, in a case where the helicopter that crashed was not marketed, sold, or the complained of part intended for use in the U.S., but rather only in Mexico). Therefore, in addition to its interest in overseeing products marketed and used within Mexico, as well as its interest in Toyota and other

16

companies doing business in Mexico, Mexico also regulates the activities of drivers within its borders. "Mexico has no reason to defer to the State of Texas for regulation" of these activities. *Vizcarra*, 925 S.W.2d at 91. "Texas therefore does not have an appreciable interest in applying its law to an automobile accident caused by negligent driving in a jurisdiction having its own laws regarding the operation of automobiles." *Id.* at 91–92.

In this case, the only connection that Toyota has with Texas is that it conducts business with unrelated products within the State. Texas had nothing to do with the Hiace van's design, manufacture, sale, and use, all of which were performed outside of Texas. "Whether [] Texas has an important policy interest in policing the conduct of subsidiaries of businesses with Texas offices that occurs outside Texas and has no effect on its territory" would be only one of several factors to consider under Section 6. *CPS Int'l, Inc. v. Dresser Indus., Inc.*, 911 S.W.2d 18, 34 (Tex. App.—El Paso 1995, writ denied).

### 3. Protection of Justified Expectations of All Parties

Appellees initiated the contact in this instance by traveling to Mexico, staying in a Mexican-owned hotel, and then made the arrangements for an excursion in Mexico, where the Mexican citizen and driver chose to use a Toyota van to transport the passengers. The van was neither designed nor manufactured in the United States;

17

it was imported to Mexico from Japan, sold by a Mexican dealership to a Mexican resident, licensed in Mexico, driven exclusively in Mexico, and was being driven on a Mexican highway when the accident occurred. Thus, when Plaintiffs left Texas, the Appellees lacked any reasonable expectations that Texas law would govern in the event of an accident in Mexico.

Comments to the Restatement provide that, "[g]enerally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. g. Toyota molded its conduct, and moreover manufactured its Hiace van, to comport with the law of either Japan or Mexico. We conclude it is unreasonable to expect Toyota to anticipate the residence of each potential passenger and further, to be held to the various laws of each passenger's home state, rather than the law applicable to an accident's location.

### 4. Certainty, predictability, uniformity of result and the ease in the determination and application of the law to be applied

We consider factors (f) and (g) together. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(f), (g). According to the Restatement, applying the law of the place where the injury occurs is "easy . . . and leads to certainty of result" because "[t]he place of injury is readily ascertainable." *Id.* § 146, cmt. e. Adjudicating tort liability issues arising from incidents on foreign roadways under the laws of the

18

victim's home state as opposed to the place of the injury may lead to uncertain and unpredictable results for corporations doing business in the foreign jurisdiction, where they have designed and manufactured products solely for that market. Applying Mexico's standards of care for a tort occurring in that state under these circumstances fosters predictability and uniformity.

Plaintiffs argue Texas law should be applied because it would be "more difficult for the parties to educate the Court on relevant Mexican law." The Texas Supreme Court rejected this argument, stating "the members of this state's judiciary are fully capable of comprehending and applying laws of other jurisdictions[,]" and "courts elsewhere than Texas have experienced no great difficulty in applying foreign laws which on their face appear to be no less exotic[.]" *Gutierrez*, 583 S.W.2d at 321. Plaintiffs have already supplied an affidavit from their expert on Mexico's law. Based on the foregoing analysis, we conclude that the laws of Mexico apply to the liability issues, even if certain causes of action are unavailable to Appellees.[5]

---

[5] As some of the Plaintiffs have filed wrongful death claims, those claims are encompassed in the foregoing analysis. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS §§ 6, 175 (AM. LAW INST. 1971).

## V. Compensatory Damages

Appellees also contend that statutory limits for certain damages and no compensation for pain and suffering and mental anguish or punitive damages leave them with an inadequate remedy if Mexico's law is applied. Compensatory damages are designed to fairly compensate the injured plaintiff. *Torrington*, 46 S.W.3d at 848 (citation omitted). Compensatory damages in Texas include economic and noneconomic damages. *See Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 152 (Tex. 2014). Economic damages are intended to compensate a plaintiff for actual economic or pecuniary loss and do not include exemplary or noneconomic damages, whereas noneconomic damages are

> awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, *injury to reputation*, and all other nonpecuniary losses of any kind other than exemplary damages.

*Id.* (citation omitted). The Texas Supreme Court has explained that "[a]ctual or compensatory damages are intended to compensate a plaintiff for the injury she incurred and include general damages (which are non-economic damages such as for loss of reputation or mental anguish) and special damages (which are economic damages such as for lost income)." *Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013).

"Considering the purpose of compensatory damages, contacts such as the site of the injury or where the tortious behavior occurred, which are important in determining which state's laws govern liability are less important." *Torrington*, 46 S.W.3d at 849; *Bain*, 257 F.Supp.2d at 878. For purposes of damages under the most significant relationship analysis, "under Texas law, the most important factor is not where the injury occurred but rather where the plaintiff is domiciled." *Bain*, 257 F.Supp.2d at 878 (citing *Torrington*, 46 S.W.3d at 849). "Compensation of an injured plaintiff is primarily a concern of the state in which the plaintiff is domiciled." *Torrington*, 46 S.W.3d at 849 (citation omitted). Texas also has an interest in protecting its residents in recovering adequate compensation for the wrongful death of their relatives in foreign lands. *Trailways, Inc.*, 794 S.W.2d at 486. The critical contacts in determining which state's law governs compensatory damages will usually be the ones with the greatest interest in the plaintiff's monetary recovery, which is typically the state of a plaintiff's domicile, and/or the most direct in protecting the defendant against financial hardship. *Torrington*, 46 S.W.3d at 848–49 (citing John B. Austin, *A General Framework for Analyzing Choice-of-Law Problems in Air Crash Litigation*, 58 J. AIR L. & COM. 909, 965 (1993); *Burgio v. McDonnell Douglas, Inc.*, 747 F.Supp.865, 871–73 (E.D.N.Y. 1990)).

## A. Application of Section 145 Factors

### 1. The Place of Injury

In determining whether Texas or Mexico has the most significant relationship to this issue, we first note that the injuries occurred in Mexico. Courts have recognized that this contact is not as important in a compensatory damages analysis. *Torrington*, 46 S.W.3d at 849 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. e).

### 2. The Place Where Conduct Causing Injury Occurred

The conduct causing the injury also occurred in Mexico, specifically the alleged negligence of the driver of the van. Additionally, Appellees claim that the van was an unreasonably dangerous product defective in its design, marketing, and introduction into the stream of commerce. The record reflects that Toyota marketed the van in Mexico, which is also where it was introduced into the stream of commerce. The Hiace van was not designed for the North American Market, and Toyota never marketed or sold it in the United States. While the alleged tortious behavior occurred in Mexico, courts have noted this factor is also not as significant in a compensatory damages analysis. *See id.*; *Bain*, 257 F.Supp.2d at 878.

22

### 3. The Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties

The Appellees are all Texas residents, Appellees dismissed the only Mexican defendant from the lawsuit, and Toyota is a Japanese company. Although Toyota does business in Mexico and Mexico has an interest in protecting entities engaged in business within its borders, we do not believe that interest outweighs the interest Texas has in ensuring its residents are fairly compensated for their injuries. This factor strongly points to Texas as having the most significant relationship with the compensatory damages issue. *Torrington*, 46 S.W.3d at 849 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. e).

### 4. The Place Where the Relationship Between the Parties is Centered

While Appellees rode in the Hiace van in Mexico, and the arrangements made for the tour excursion occurred in Mexico, we do not believe this contact outweighs the Appellees' domicile being in Texas. "[W]here there is no pre-existing contractual relationship between the parties, as in a tort action like this one, the place where the relationship is centered is duplicative of the place of injury." *Grosskopf v. Chrysler Grp. LLC*, No. A-14-CA-801-SS, 2015 WL 6021851, at *5 (W.D. Tex. Oct. 14, 2015) (citing *Denman by Denman v. Snapper Div.*, 131 F.3d 546, 549–50 (5th Cir. 1998)).

23

## B. Application of General Section 6 Factors

The two most pertinent choice of law principles under Restatement section 6 to this issue are (1) the relevant policies of the forum state and (2) the relevant policies of other interested states.[6] We consider the policies of both Texas and Mexico, which are consistent. Indeed, Appellees' expert explained in his affidavit that in Mexico, "the purpose of [compensatory] damages is to restore the victim, through payment of compensatory damages or otherwise, to the position the victim was in prior to the injury." *See* Stephen Zamora et al., Mexican Law 525 (2004).

Texas, as the domicile of the plaintiffs, is the state that will bear the burden if the plaintiffs are not fairly and adequately compensated. Here, although Mexico does allow for some form of compensatory damages, allowable damages are capped based on prevailing Mexican wage rates, which are grossly inconsistent with prevailing

---

[6] As noted in our most significant relationship analysis for the liability issues, the remaining general principles include "the needs of the interstate system, the protection of justified expectations, the basic policies underlying the particular field of law, certainty, predictability, and uniformity of result, and the ease of the determination and application of the law to be applied[,]" but here are insignificant in our determination of what law to apply for compensatory damages. *Grosskopf v. Chrysler Grp. LLC*, No. A-14-CA-801-SS, 2015 WL 6021851, at *6, n.9 (W.D. Tex. Oct. 14, 2015) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971)). In tort cases where the parties have not previously contracted, "the factors of the justified expectations of the parties and of certainty, predictability, and uniformity of result are of lesser importance." *Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302, 314 (Tex. App.—Texarkana 2004, no pet.).

wage rates in Texas where the Appellees worked as educators. Moreover, in terms of making a plaintiff whole, there are radically different costs associated with living, obtaining medical care, and ongoing therapy in Mexico versus in Texas. "[I]t makes little sense to apply Mexico's measure of damages, which indexes the amount of recovery to the prevailing wages set by the labor law of that nation" when the Plaintiffs in this case are all Texas residents, and there are no longer Mexican residents named in the lawsuit. *See Gutierrez*, 583 S.W.2d at 319. At least one Plaintiff is a paraplegic because of the accident and will require medical services for the remainder of her life. Assessing Appellees' compensatory damages based on the costs of certain services in Mexico, when some continued medical treatment will be provided in Texas, and their employment in Texas was impacted, makes little sense.

Based on the domicile of the Appellees, the strong interest Texas has in insuring its residents are fairly compensated, along with the prevailing policy interests of both Texas and Mexico, we conclude that Texas has the most significant relationship to the compensatory damages issue. Therefore, Texas law applies to this issue.[7]

---

[7] We note that section 171 of the Restatement (Second) of Conflict of Laws provides additional guidance regarding the interplay between determinations of compensatory damages issues and liability issues, specifically items of loss and apportionment of damages. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS § 171 cmts. a–e (AM. LAW INST. 1971).

## VI. Punitive Damages

Unlike compensatory damages, which attempt to make a plaintiff whole, punitive damages are meant to punish and deter a defendant for conduct deemed egregious. *See Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 873 (Tex. 2017) (citations omitted) (noting "compensatory damages redress concrete losses caused by the defendant's wrongful conduct, while exemplary damages are aimed at deterrence and retribution"); *Bennett v. Grant*, 525 S.W.3d 642, 650 (Tex. 2017) ("As an overarching premise, exemplary damages further the state's interest in punishing and deterring unlawful conduct."). Punitive damages are inexorably linked to a jurisdiction's laws pertaining to liability and what is "unlawful" in a particular jurisdiction. This is because such laws typically incorporate a standard of care whereby conduct and its level of egregiousness are measured. We have already determined Mexico has the most significant relationship to the issue of liability, and its laws apply to the liability portion of Appellees' claims. The applicable standards of care as they exist in Mexico necessarily implicate punitive damages.

To impose damages meant to punish a party based on standards of care in Texas, when neither the conduct giving rise to the injury nor the injury itself arose in Texas defies logic. To do so would impose Texas legal standards on Mexico, which made conscious decisions not to allow such awards. A State cannot punish a

defendant for conduct that may have been lawful where it occurred. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 572 (1996) (noting "a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States"). Toyota designed the Hiace van for the Mexican market, which presumably did not require the types of safety features the United States requires and does not permit strict product liability claims. The necessary inference is that Mexico did so to encourage vehicle manufacturers to design and introduce vehicles in the Mexican marketplace that its citizens could afford. To punish Toyota via exemplary damages as allowed under Texas law for a product that may not have been defective where it was introduced into the stream of commerce in a jurisdiction that does not recognize strict product liability or punitive damages contradicts the law as enunciated by the United States Supreme Court. *See id.* at 572. Mexico's rule of law should apply to any exemplary or punitive damages issue, even if such recovery is disallowed.

## VI. Conclusion

The trial court erred in ruling Texas law applies to all issues in the case. Having applied the Restatement's most significant relationship test to each substantive issue, we conclude that the law of Mexico applies to liability issues and punitive damages issues, and Texas law applies to the issue of compensatory

27

damages. We reverse the trial court's order of February 27, 2017, and we remand this cause for proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on March 1, 2018
Opinion Delivered August 8, 2019

Before McKeithen, C.J., Kreger and Johnson, JJ.