**Affirmed and Majority and Concurring Opinions filed May 31, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-16-00481-CV

**ALEJANDRO VIVANCO ALARCON AS EXECUTOR OF THE ESTATE OF ARACELI ALARCON VELAZQUEZ, DECEASED, MARIE EUGENIE ALARCON VELAZQUEZ, AND ROBERT BLAAUW AS RECEIVER FOR ZALINCO CORPORATION, N.V. AND OCANA CORPORATION, N.V.,** Appellants

**V.**

**GABRIEL ALARCON VELAZQUEZ, Appellee**

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2006-51822**

## M A J O R I T Y   O P I N I O N

Appellants Alejandro Vivanco Alarcon, as executor for the estate of Araceli Alarcon Velazquez, deceased, Marie Eugenie Alarcon Velazquez, and Robert Blaauw as receiver for Zalinco Corporation, N.V. and Ocana Corporation, N.V., appeal from a take-nothing judgment signed after the trial court determined that

Mexican law applied to all claims appellants asserted against appellee, Gabriel Alarcon Velazquez. In two issues, appellants contend the trial court erred when it concluded that Mexican law applied to all of their claims. Finding no error, we affirm.

## BACKGROUND

This long-running litigation arises out of a family dispute involving three siblings, two sisters and a brother, all citizens and lifetime residents of Mexico. A fourth sibling is not involved in this litigation. One of the sisters, Araceli Alarcon Velasquez, passed away after the litigation started and is represented by Alejandro Vivanco Alarcon, ancillary executor of her estate. For ease of reference, we refer to the family appellants collectively as "the sisters."

The sisters allege that in 1981 their father set up two corporations in Curacao,[1] Zalinco Corporation, N.V. and Ocana Corporation, N.V., for the benefit of all siblings. The sisters contend that the father gave each child a 25 percent interest in each corporation. They further allege that their father charged Gabriel, as the oldest sibling, with managing the corporations for the benefit of all. The two corporations established bank accounts with a New York City bank. The original capitalization for each corporation was $6,000. Establishing these bank accounts was the only activity undertaken by the corporations.

ATC Corporate Services (Curacao), N.V. was appointed managing director of the two corporations. The sisters allege, however, that ATC did not manage the two corporations. They contend Gabriel controlled the corporations through a general power of attorney. The sisters assert that Gabriel, using his general power of attorney, looted the corporations of their assets by ordering the New York bank

---

[1] Curacao is part of the Netherlands Antilles.

2

to send millions of dollars to other bank accounts, including his own personal accounts, around the world and throughout the United States, including Texas. The sisters allege that Gabriel spent the corporations' money for his own personal benefit, including paying expenses related to his yacht, the purchase of a vacation home, and the purchase of condominiums in New York.

According to the sisters, Gabriel assured them he was properly investing the family's assets, including the assets of the two corporations, for the benefit of all of the siblings. The sisters assert they relied on these allegedly false representations for years. The sisters also allege that Gabriel withheld information from them and from ATC.

The sisters contend that Gabriel established the base of operations for the corporations and his own misuse of the corporations' assets in Houston, Texas. In support of their contention that Houston was the site of Gabriel's base of operations, the sisters emphasize the undisputed fact that Gabriel used an apartment located in Houston as the mailing address for the corporations' New York bank accounts. They also allege that Gabriel retained personal attorneys, accountants, and others in Houston using corporate money. They further allege that he used the corporations' resources to make personal investments in Houston real estate and in a Houston day-trading operation.

The corporations' stock originally was held by two nominal shareholders, both selected by Gabriel. The sisters acquired fifty percent of the stock in each of the corporations in 2004.[2] Litigation between the siblings began in Curacao that

---

[2] Gabriel claimed that he, not his father, formed the two corporations for his own business interests. He denied that his sisters had any ownership interest in the two corporations. Gabriel did not deny the various transactions made through the New York banks. He instead asserted that all funds deposited into the corporations' New York bank accounts were his personal funds, generated through his personal business activities.

3

same year.  The primary issues in the Curacao litigation were (1) ownership of the two corporations, and (2) an accounting of the corporations' assets.  In 2004, the Curacao court determined that the sisters were the owners of fifty percent of the stock of the two corporations.  In 2007, the Curacao court dissolved the two corporations and appointed appellant Robert Blaauw the receiver for both corporations.  Blaauw had the authority to do everything necessary to liquidate the two companies.  In that effort, Blaauw requested an accounting from Gabriel, but Gabriel refused to comply.  Blaauw then sought a court order requiring Gabriel to comply, and, in 2011, the Curacao court granted that request, ordering Gabriel to render an accounting and to produce supporting documentation.  In 2013, the Curacao court found that the two corporations were not conducting any business, their activities were limited to holding bank accounts in various countries, but not in Curacao, and Blaauw concluded "they had a so-called 'dormant status.'"

The sisters filed suit against Gabriel in Harris County, Texas in 2006. Blaauw, as receiver for the two corporations, joined the lawsuit against Gabriel in 2010.  Appellants asserted numerous claims against Gabriel, including (1) breach of informal fiduciary duty, (2) fraud, (3) breach of fiduciary duty, (4) conversion, (5) fraudulent transfer, (6) "money had and received/unjust enrichment," (7) violations of the Texas Theft Liability Act, and (8) a suit for an accounting.[3]  In the event the trial court determined that Texas law did not apply to some or all their claims, appellants asserted in the alternative claims under Cuaracao statutory law that Gabriel breached his duty of reasonableness and fairness to all parties involved in the corporations, his duty to properly manage the corporations, and his duty to render an accounting to justify his actions while he controlled the corporations. All of appellants' claims grow out of Gabriel's alleged (1) misuse of the two

---

[3] Only the sisters brought claims for breach of informal fiduciary duty.  The remaining claims were brought by the sisters and the receiver.

4

corporations' assets, (2) misrepresentations regarding his alleged misuse of the corporations' assets, and (3) failure to disclose his alleged misdeeds.

Gabriel eventually filed an amended motion asking the trial court to apply Mexican law to all claims asserted by appellants, and the trial court granted that motion. The trial court's decision came on the eve of trial and after it had previously rejected motions asserting that Mexican law applied. After the trial court determined that Mexican law applied to all of appellants' claims, the parties signed an agreement under Texas Rule of Civil Procedure 11 that (1) all of appellants' claims were time-barred by Mexican law, (2) Gabriel would non-suit his counterclaims, and (3) appellants reserved the right to appeal the trial court's choice-of-law determination. This resulted in a final take-nothing judgment signed by the trial court. This appeal followed.

ANALYSIS

I.    **Blaauw has standing to pursue the Curacao corporations' claims.**

Appellants raise two issues on appeal challenging the trial court's determination that Mexican law applies to their respective claims. Before reaching the merits of appellants' issues, we first must address Gabriel's assertion, raised in a conditional cross-appeal, that Blaauw does not have standing to pursue the corporations' claims because he was appointed receiver by a Curacao court. *See State v. Naylor*, 466 S.W.3d 783, 805 (Tex. 2015) (appellate courts have affirmative duty to confirm jurisdiction exists).

Standing, a component of subject-matter jurisdiction, is a constitutional prerequisite to maintaining suit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993); *Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 670 (Tex. App.—Houston [14th

5

Dist.] 2006, pet. denied). Standing requires that there exist a real controversy between the parties that will actually be determined by the judicial declaration sought. *Sammons & Berry, P.C. v. Nat'l Indem. Co.*, No. 14-13-00070-CV, 2014 WL 3400713, at *3 (Tex. App.—Houston [14th Dist.] July 10, 2014, no pet.) (mem. op.) (citing *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1999)). Only the party whose primary legal right has been breached may seek redress for the injury. *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 249 (Tex. App.—Dallas 2005, no pet.). Without a breach of a legal right belonging to a specific party, that party has no standing to litigate. *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 669–70 (Tex. App.—Fort Worth 2001, pet. denied). Standing cannot be waived and can be raised for the first time on appeal. *Tex. Ass'n. of Bus.*, 852 S.W.2d at 444–45. When reviewing standing on appeal, we construe the petition in favor of the plaintiff and, if necessary, review the entire record to determine whether any evidence supports standing. *Id.* at 446. Whether a party has standing to bring a claim is a question of law reviewed de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

Gabriel relies on very old cases, the most recent issued in 1921, for the proposition that an appointed receiver's authority to pursue claims for a dissolved corporation does not cross the borders of the appointing court.[4] Having reviewed the cases cited by Gabriel, as well as more recent caselaw addressing foreign receiver standing, it is clear that the law has changed and as a result, Gabriel's cases are no longer authoritative. We conclude instead that Blaauw, a receiver appointed by a Curacao court, has standing to pursue the corporations' claims through the application of comity principles. *See K.D.F. v. Rex*, 878 S.W.2d 589,

---

[4] The sole case cited by Gabriel that was issued in the previous ninety-plus years is distinguishable because it addresses guardians, not foreign receivers. *See In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d 565, 570–71 (Tex. 2015).

593 (Tex. 1993) ("Comity is a doctrine grounded in cooperation and mutuality. United States courts defer to the sovereignty of foreign nations according to principles of international comity.").

Texas will extend comity by recognizing the laws and judicial decisions of another state, unless the foreign state declines to extend comity to Texas or sister states under the same or similar circumstances. *Id.* at 593–94. Comity has been applied to receivers appointed by foreign courts. *See Massi v. Holden*, No. 09-1821, 2011 WL 6181258, at *4 (D. Minn. Dec. 13, 2011) ("There is a long and consistent precedent of deferring to receivership orders issued by a properly-instituted court of a foreign country that has jurisdiction, even when they are not final judgments."); *BCCI Holdings (Luxembourg), Societe Anonyme v. Khalil*, 20 F.Supp.2d 1, 4 (D. D. C. 1997) ("The recognition of liquidators or trustees appointed by foreign courts to act as receivers empowered to sue or be sued on behalf of insolvent corporations is neither unusual nor contrary to federal law."). Indeed, at least one court has extended comity specifically to a receiver appointed by a Netherlands Antilles court. *See In re Colorado Corp.*, 531 F.2d 463, 468–69 (10th Cir. 1976) (holding that it was an abuse of discretion for trial court to deny comity to receiverships created by Luxembourg and Netherlands Antilles courts). Because there is nothing in the record indicating that Curacao, part of the Netherlands Antilles, has not extended comity to Texas in the past, nor that accepting the Curacao court's appointment of Blaauw as the receiver of the two corporations would violate Texas public policy, we conclude that Blaauw has standing to pursue the corporations' claims in Texas.[5] *See K. D. F.*, 878 S.W.2d at

---

[5] To the extent that Gabriel's cross-appeal issue is intended as a challenge to Blaauw's capacity, it fails for lack of a verified pleading. Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 93(1); *Nootsie, Ltd.*, 925 S.W.2d at 662 (holding Nootsie waived any complaint about appraisal district's legal capacity because it failed to raise the issue through a verified pleading in the trial court).

595 ("In the absence of a clear indication to the contrary, we will treat Kansas as a cooperative jurisdiction. Texas will extend comity to the law of a cooperative jurisdiction so long as that law does not violate Texas public policy."); *AutoNation, Inc. v. Hatfield*, 186 S.W.3d 576, 580 n.4 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("Because the real party in interest was unable to show that Kansas would not extend comity, the court treated Kansas as a cooperative jurisdiction and determined that Texas should extend comity to Kansas provided Kansas law does not violate Texas public policy.").

## II. The trial court did not err when it decided that Mexican law applied to all claims raised by appellants.

In two issues appellants challenge the trial court's ruling that Mexican law applied to all of the claims asserted in their lawsuit against Gabriel. Because appellants asserted many of the same causes of action, and filed a single brief in which they collectively addressed their issues on appeal, we address both issues together.

### A. Standard of review and applicable law

The issue of which state's law to apply is a question of law for the court to decide. *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 70 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We therefore review the trial court's decision de novo. *Id.*

A court must make a conflict-of-law decision only when a case is connected with more than one state and the laws of those states differ on points in issue. *Id.* at 69. The parties to this appeal established the existence of a conflict and we must determine if the trial court erred when it decided that Mexican law, rather than Texas or Curacao law, control. *Id.* at 70.

Texas courts use the "most significant relationship" test found in the

8

Restatement (Second) of Conflicts of Laws to decide choice-of-law issues.[6]  *Id.* Under that test, a court considers which state's law has the most significant relationship "to the particular substantive issue to be resolved."  *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000).  The Restatement methodology requires a separate conflict-of-laws analysis for each issue in a case. *Greenberg Traurig*, 161 S.W.3d at 70.  Appellants' claims in this case can be placed into two groups: general torts (claims related to Gabriel's alleged misuse of the corporations' assets) and fraud-based claims (claims related to Gabriel' alleged misrepresentations and his alleged failure to disclose his alleged misdeeds).  Three sections of the Restatement apply here.

Section 6(2) of the Restatement sets out general factors relevant to the choice-of-law question:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971).

Section 145 of the Restatement provides specific considerations relevant when applying the Section 6 general conflict-of-laws principles to a tort case:

---

[6] The Texas supreme court adopted sections 6 and 145 of the Restatement (Second) of Conflict of Laws in *Gutierrez v. Collins*, 583 S.W.2d 312, 318–19 (Tex. 1979).

9

(1)  The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2)  Contacts to be taken into account . . . to determine the law applicable to an issue include:

   (a)  the place where the injury occurred,

   (b)  the place where the conduct causing the injury occurred,

   (c)  the domicile [sic], residence, nationality, place of incorporation and place of business of the parties, and

   (d)  the place where the relationship, if any, between the parties is centered.

*Id.* at § 145.

Finally, this court has adopted Restatement section 148 to determine the governing law in fraud and misrepresentation cases. *Greenberg Traurig*, 161 S.W.3d at 71. Section 148 provides:

(1)  When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(2)  When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

   (a)  the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

10

(b)     the place where the plaintiff received the representations,

(c)     the place where the defendant made the representations,

(d)     the domicil [sic], residence, nationality, place of incorporation and place of business of the parties, . . . .

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148.  When evaluating fraud-based claims to determine governing law, the principal focus is on where the conduct occurred.  *Greenberg Traurig*, 161 S.W.3d at 72.

The Restatement generally encourages courts to rely less on the section 6 general principles than on the application of the factors found in the sections addressed to specific types of claims.  *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 357 (Tex. App.—Houston [14th Dist.] 2003, no pet.).  The contacts relevant to those sections are to be evaluated according to their relative importance with respect to the particular issue.  *Red Roof Inn, Inc. v. Murat Holdings, L. L. C.*, 223 S.W.3d 676, 685 (Tex. App.—Dallas 2007, pet. denied).  The number of contacts with a state are not determinative; rather, we evaluate them in light of the state policies underlying the particular substantive issue.  *Enterprise Prods. Partners, L.P. v. Mitchell*, 340 S.W.3d 476, 481 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd).

## B.     Appellants' non-fraud-based tort claims[7]

The first factor to be considered is the place of injury.  The sisters were citizens and residents of Mexico.  The sisters alleged that they suffered financial harm as a result of Gabriel's alleged misuse of funds belonging to the two corporations formed by their father for the benefit of all of his children.  Any injury they suffered as a result of Gabriel's alleged conversion and theft of the corporations' assets would have been suffered in Mexico.  *See* RESTATEMENT

---

[7] These include conversion and claims under the Texas Theft Liability Act.  These claims were asserted by the sisters and Blaauw.

(SECOND) OF CONFLICT OF LAWS § 145 cmt. (f) ("The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business."). The corporations were organized in Curacao, and it was the corporations' assets Gabriel allegedly converted or stole. The corporations conducted no business in Curacao or elsewhere, had no bank accounts in Curacao, and were ultimately declared dormant by the Curacao courts. We conclude that any harm the corporations may have experienced did not occur in Curacao. The corporations did have bank accounts in New York and Gabriel allegedly ordered the New York bank to send corporate funds around the globe for his personal use. The locations included California, New York, Mexico, France, Switzerland, England, Spain, and Texas. We conclude that the final destinations of these funds transfers were fortuitous and therefore carry little weight in the analysis. *See Schippers v. Mazak Props., Inc.*, 350 S.W.3d 294, 300 (Tex. App.—San Antonio 2011, pet. denied) ("According to the Restatement, when the place of injury is fortuitous, the place of injury is not as important in the determination."); *Sico N. Am., Inc. v. Willis*, No. 14-08-00158-CV, 2009 WL 3365856, *3 (Tex. App.—Houston [14th Dist.] Sept. 10, 2009, no pet.) (mem. op.) ("More importantly, place of injury is not an important contact when—as in this case—the place of injury is fortuitous."). The corporations conducted no activities in Texas and therefore could have suffered no harm here. We conclude this factor, to the extent it weighs in the analysis, points to Mexico or New York, not Curacao or Texas.

The second factor to be examined is the place where the conduct causing the alleged injury occurred. The conduct at issue here is Gabriel ordering the corporations' New York bank to send funds allegedly belonging to the corporations to various locations around the world. Appellants contend that this

12

conduct occurred in Houston. They rely on the undisputed fact that the letters sent to the bank ordering the transfers had a Houston mailing address for the corporations.[8] Gabriel does not deny ordering the transfers. Gabriel asserts instead that he ordered the transfers either from his office in Mexico, or occasionally while he was actually visiting New York. In support of this contention, Gabriel points to (1) his deposition and other testimony to that effect, (2) his testimony that Houston was not the headquarters of the two corporations and the use of the Houston mailing address resulted entirely from Mexico's poor mail service, and (3) the fact that some of the exhibit letters have fax headers establishing they were faxed from Mexico. Finally, while Gabriel admitted that he made frequent trips to Houston and he stayed at the address used on the bank transfer letters, he pointed to the lack of evidence tying the various bank transfer letters to a time when he was visiting Houston. We conclude that this factor points to both Mexico and Texas.

The third factor to be considered is the domicile, residence, nationality, place of incorporation, and the place of business of the parties. It is undisputed that the sisters and Gabriel were always residents and citizens of Mexico. It is also undisputed that Mexico was the location of Gabriel's many business activities. While the corporations were incorporated in Curacao, they conducted no business there or anywhere else. We conclude that this factor weights most heavily toward Mexico.

The fourth factor in the analysis is the place where the parties' relationship is centered. The sisters allege that their deceased father, a Mexican citizen and resident, created the corporations on behalf of the four siblings, all also Mexican

---

[8] Appellants attached twelve letters as Exhibit C to their response to Gabriel's amended motion for application of Mexican law. The letters are dated between 1996 and 2003 and the transfers range in amount from $4,000 to $1.5 million. Gabriel signed all of the letters, usually as a representative of the particular corporation that owned the bank account.

residents. The shareholders of the corporations were always Mexican residents. They allege the father charged Gabriel with protecting this gift for the benefit of all four siblings. Further, Gabriel, a Mexican resident, held a power of attorney to manage the corporations. We conclude Mexico is the place where the parties' relationship is centered. *See Jelec USA, Inc. v. Safety Controls, Inc.*, 498 F.Supp.2d 945, 953 (S. D. Tex. 2007) (concluding parties' relationship centered in Louisiana because "the parties maintained contractual and fiduciary relationships both before and after this suit was filed, and this case centers around the conduct of each party affecting a business relationship with another party, all of whom are citizens of Louisiana.").

While Texas, New York, and Curacao have some connection to the general tort allegations in this lawsuit, applying the general factors found in section 6, we conclude that Mexico has the most significant relationship to the parties and the dispute. *See Highland Crusader Offshore Partners, L.P. v. Motient Corp.*, 281 S.W.3d 237, 252 (Tex. App.—Dallas 2009, pet. denied) ("Although our review does not reveal any overwhelming factor in determining which state has the most significant relationship to the occurrence and the parties, we conclude Texas has a more significant relationship to the dispute than New York and therefore New York law does not apply."); *Red Roof Inns, Inc.*, 223 S.W.3d at 685 (holding Louisiana rather than Ohio had more significant relationship to dispute after examining section 145 contacts and section 6 general factors).

### C. Appellants' fraud-based claims.[9]

The section 148 factors generally overlap the section 145 factors. *Compare* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §145 *with* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §148. As with general tort claims, when presented with a conflict-of-law issue relating to fraud-based claims, courts will apply the law of the state with the most significant relationship to the parties and the dispute. *Greenberg Traurig*, 161 S.W.3d at 75. When evaluating fraud-based claims to determine governing law, the principal focus is on where the conduct occurred. *Id.* at 72.

Appellants' fraud-based claims focus on allegations that Gabriel misrepresented his use of the corporations' assets, failed to disclose his alleged misuse of the corporations' assets, and misrepresented the status of the two corporations. These actions, or inactions as the case may be, allegedly occurred in Mexico, where Gabriel lived and conducted his business. Further, the sisters' reliance allegedly occurred in Mexico as well. While the corporations' reliance allegedly occurred in Curacao, we conclude that Mexico has the most significant relationship with appellants' fraud-based claims. *See id.* at 75 (concluding New York law applied despite Texas having some relationship to the issues because "the actions and omissions of Greenberg Traurig did not occur in Texas.").

---

[9] This category includes the remainder of appellants' claims, including breach of informal fiduciary duty, fraud, breach of fiduciary duty, fraudulent transfer, "money had and received/unjust enrichment," suit for an accounting, and Curacao statutory claims alleging Gabriel breached duties as the manager of the corporations. *See Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 675 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("To be entitled to an accounting, a plaintiff usually must have a contractual or fiduciary relationship with the party from which the plaintiff seeks the accounting."); *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage.").

Having determined that Mexico has the most significant relationship to all issues alleged in this litigation, we overrule appellants' issues.

## CONCLUSION

Having overruled all of the issues raised by appellants in this appeal, we affirm the trial court's judgment.


/s/     Martha Hill Jamison
       Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jamison (Frost, C.J., concurring).