**Opinion issued December 29, 2020**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-19-00330-CV**

———————————

**ROBERT SALAZAR, ELIA SALAZAR AND/OR ALL OCCUPANTS OF 6327 DARBY WAY, SPRING, TX 77338, Appellants**

**V.**

**HPA TEXAS SUB 2016-1 LLC, Appellee**

---

**On Appeal from County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1124430**

---

**MEMORANDUM OPINION**

Robert Salazar, Elia Salazar and/or All Occupants of 6327 Darby Way,

Spring, Tx 77338 (collectively, "the Salazars") are appealing a final judgment

rendered by the county court at law in favor of appellee HPA Texas Sub 2016-1 LLC

on its forcible detainer action. On appeal, the Salazars argue that: (1) neither the justice court nor the county court had subject matter jurisdiction over the forcible detainer action because HPA did not have standing to bring the forcible detainer action and the evidence raises a question of title; (2) the county court erred by not admitting the unsigned copy of a 2015 lease and right-to-purchase agreement between them and a third party and evidence that the Salazars had made payments to HPA and improvements to the property; (3) the county court erred by concluding that it had lost plenary power and refusing to consider the Salazars' June 3, 2019 and August 12, 2019 post-trial motions; and (4) the Court of Appeals erred by denying their motions to stay enforcement of the judgment.

We affirm the county court's judgment.

**Background**

On March 27, 2015, the Salazars and HP Texas I LLC d/b/a HPA TX LLC executed a "Residential Lease Agreement" ("2105 Lease") for a residence on Darby Way in Spring, Texas ("the Property"). The parties also simultaneously signed a "Residential Right to Purchase" agreement that gave the Salazars the right to purchase the Property during the lease period at an agreed price (collectively with the 2015 Lease, "the 2015 Agreement"). The 2015 Lease, which became effective on March 27, 2015 for an initial term of twelve months, also provided for two twelve-month renewal terms, which commenced immediately upon expiration of the

2

prior term. The lease further states that the second renewal term "shall end no later than the day immediately following preceding the third (3rd) anniversary of the Effective Date," i.e., March 26, 2018.

On February 21, 2018, during the second renewal term of the 2015 Lease, the Salazars gave notice to HPA that they were exercising their right to purchase the Property pursuant to the "Right to Purchase Agreement." HPA and the Salazars executed a "Real Estate Sale Contract" for the Property on February 28, 2018 and the Salazars deposited the $1,000 earnest money as required by the contract. The agreed upon closing date was March 27, 2018. With respect to possession of the Property, the sale contract states that "Purchaser [the Salazars] shall have possession of the Property in its then present required condition upon closing and funding. Any possession by Purchaser prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties." It is undisputed that the parties did not close on the contract and the Salazars did not acquire title to the Property.

The Salazars and HPA executed a new lease for the Property (the "2018 Lease"). The 2018 Lease commenced on March 27, 2018 and terminated on March 26, 2019. The lease defines the Salazars as "Tenants" and HPA as "Landlord." The Salazars and HPA executed a "Termination of Right to Purchase and New Lease Agreement" ("TRP") simultaneously with the 2018 Lease. In the TRP, the Salazars

acknowledged that the 2015 Lease expired on March 26, 2018 and that they had no right to extend or renew the 2015 Lease beyond that date. The TRP also states that the Salazars exercised their right to purchase the Property under the terms of the 2015 Agreement, entered into a real estate sale contract with HPA pursuant to the 2015 Agreement, and that the parties anticipated that the closing would not occur before or on the date the 2015 Lease expired. The TRP also states that, notwithstanding anything in that agreement, the 2015 Right to Purchase Agreement expires on the 2015 Lease's expiration date, the Salazars will no longer have a right to purchase the Property, except pursuant to the purchase contract, and that the purchase contract will remain in full force and effect in accordance with its terms.

On October 8, 2018, HPA filed a forcible detainer action in the justice court. In its petition, HPA alleged that it was the owner of the Property, it had leased the Property to the Salazars in 2018, and the Salazars failed to timely pay rent for the months of September and October 2018 as required by the 2018 Lease. HPA alleged that it gave the Salazars notice to vacate the Property, the Salazars had failed to comply, and that HPA had terminated the Salazars' right to possession of the Property. [CR 5-6] On September 11, 2018, the justice court dismissed HPA's forcible detainer action for want of jurisdiction. HPA appealed to the county court.

The county court conducted a trial de novo on March 11 and 27, 2019. The Salazars offered an unsigned copy of the 2015 Agreement into evidence, but HPA

objected and the court sustained the objection. At the conclusion of the trial, the court found that HPA was entitled to a judgment for possession, awarded HPA approximately $20,000 in unpaid rent for September 2018–March 2019, plus attorney's fees, and ordered that a writ of possession would issue on April 30, 2019 if the Salazars had not vacated the Property by that time. The trial court also set the amount of a supersedeas bond.

The Salazars filed a motion for new trial on April 25, 2019 challenging the court's jurisdiction to hear the case and they attached a signed copy of the 2015 Agreement. On April 29, 2019, they filed a motion to stay enforcement of the eviction order on the same ground. The county court denied the motion to stay enforcement of the judgment after a hearing on May 1, 2019.

On May 7, 2019, the parties entered into a Rule 11 Agreement in which the Salazars agreed (1) to vacate the Property by June 3, 2019; (2) if they did not vacate the Property by that date, the HPA would proceed with the execution of the writ of possession; (3) to pass the hearing on their motion for new trial and withdraw the motion from the court's consideration; and (4) not to pursue any other motions seeking to stop the execution of the writ of possession.

Despite having agreed not to pursue any further motions seeking to stop the execution of the writ, the Salazars filed two more motions asking the court to dismiss the forcible detainer action for lack of jurisdiction and vacate the March eviction

5

order. Specifically, on June 3, 2019, the Salazars filed a motion to dismiss the forcible detainer action for lack of jurisdiction based on the existence of the 2015 Agreement, which the Salazars argued raised questions of title and possession. HPA filed a response to the motion in which it argued that the court's plenary power had expired upon the withdrawal of the Salazars' previous motion for new trial. The parties assert that the county court determined during a June 19, 2019 hearing that it had lost plenary power and denied the motion. The Salazars' motion to reconsider was also denied.

On August 12, 2019, the Salazars filed another motion based on newly discovered evidence, namely, a special warranty deed conveying the Property from HPA to HP on June 4, 2018. The Salazars argued that the justice and county courts did not have jurisdiction over the forcible detainer action because HPA was not the owner of record when it filed the eviction proceeding in October 2018, and, thus, did not have standing to bring the action. The parties assert that the county court denied this motion during a hearing on August 21, 2019.

The Salazars also filed multiple "emergency" motions in this Court to stay and/or vacate the judgment awarding HPA possession of the property which were denied.

**Subject Matter Jurisdiction**

The Salazars argue that the justice and county courts did not have subject matter jurisdiction over HPA's forcible detainer action because HPA did not have standing to evict them and the 2015 Agreement, which gave the Salazars the option to purchase the Property during the term of the 2015 Lease, raised questions of title.

**A.     Standard of Review**

Subject matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

**B.     Forcible Detainers**

Jurisdiction over a forcible detainer action is expressly given to the justice court of the precinct where the property is located and, on appeal, to the county court for a trial de novo. TEX. PROP. CODE § 24.004(a); TEX. GOV'T CODE § 27.031(a)(2); TEX. R. CIV. P. 510.10(c). Neither the justice court nor the county court has jurisdiction to determine or adjudicate title to land. *See generally Black v. Washington Mut. Bank*, 318 S.W.3d 414, 417 (Tex. App.—Houston [1st Dist.] 2010, pet. dism'd w.o.j.).

A forcible detainer action is intended to be a speedy, simple, and inexpensive means to obtain immediate possession of property. *Marshall v. Hous. Auth. of City of San Antonio*, 198 S.W.3d 782, 787 (Tex. 2006). "Judgment of possession in a forcible detainer action is not intended to be a final determination of whether the eviction is wrongful; rather, it is a determination of the right to immediate possession." *Id*. Thus, to prevail in a forcible detainer action, the plaintiff is not required to prove title, but is only required to present sufficient evidence of ownership to demonstrate a superior right to immediate possession. *See Trimble v. Fed. Nat'l Mortg. Ass'n*, 516 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see also Marshall*, 198 S.W.3d at 787 (stating only issue in forcible detainer proceeding is right to actual and immediate possession). If, however, an issue of title is so intertwined with the issue of possession that a court must resolve the title dispute before determining which party has a superior right to immediate possession, then the justice court and the county court lack jurisdiction to resolve the matter and must dismiss the case. *Yarbrough v. Household Fin. Corp. III*, 455 S.W.3d 277, 280 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A landlord-tenant relationship provides "an independent basis on which the trial court could determine the issue of immediate possession without resolving the issue of title to the property." *Rice v. Pinney*, 51 S.W.3d 705, 712 (Tex. App.—Dallas 2001, no pet.).

8

A forcible detainer action is cumulative of any other remedy that a party may have in the courts of this state and therefore, forcible detainer actions in justice courts may be brought and prosecuted concurrently with suits to try title in district court. *Villalon v. Bank One*, 176 S.W.3d 66, 71 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *see also Rice*, 51 S.W.3d at 709; *Haith v. Drake*, 596 S.W.2d 194, 196–97 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *see also* TEX. PROP. CODE § 24.008 (stating suit for forcible detainer "does not bar a suit for trespass, damages, waste, rent, or mesne profit").

## C. Standing

The Salazars argue that the county court did not have subject matter jurisdiction in this case because HPA did not have standing to evict them. According to the Salazars, only a "landlord," as defined by the Property Code, has standing to evict a tenant, and HPA was neither the Property's owner nor did it meet the statutory definition of a "landlord."

Standing, a component of subject-matter jurisdiction, is a constitutional prerequisite to maintaining suit under Texas law. *See Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020); *Tex. Air Control Bd.*, 852 S.W.2d at 444–45. We review questions of standing de novo because standing is a component of subject matter jurisdiction. *See Farmers Tex. Cty. Mut. Ins. Co.*, 598 S.W.3d at 240. When reviewing standing on appeal, we construe the petition in favor

9

of the plaintiff and, if necessary, review the entire record to determine whether any evidence supports standing. *Tex. Ass'n. of Bus.*, 852 S.W.2d at 446; *see also In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018) (stating courts also consider relevant evidence offered by parties, if any, when determining standing).

Standing requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court. *Heckman v. Williamson Co.*, 369 S.W.3d 137, 154 (Tex. 2012); *see also Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (stating issue of standing focuses on whether party has sufficient relationship with lawsuit so as to have "justiciable interest" in its outcome). Generally, to have standing (1) the plaintiff must be personally injured; (2) the plaintiff's injury must be fairly traceable to the defendant's conduct; and (3) the plaintiff's injury must be likely to be redressed by the requested relief. *See Heckman*, 369 S.W.3d at 154. A standing inquiry requires a careful examination of the allegations in the petition to determine whether the "particular plaintiff is entitled to an adjudication of the particular claims asserted." *Id.* at 156 (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). "Only the party whose primary legal right has been breached may seek redress for the injury." *Alarcon v. Velazquez*, 552 S.W.3d 354, 359 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). "Without a breach of a legal right belonging to a specific party, that party has no standing to litigate." *Id.*

"A plaintiff does not lack standing simply because he cannot prevail on the merits of his claim." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008).

Here, HPA alleged in its petition that it leased the Property to the Salazars in 2018 and it attached a copy of the 2018 Lease. The 2018 Lease states that if the Salazars, as tenants, fail to comply with any provision of the lease, including their obligation to pay their rent on time, HPA has the right to terminate the Salazars' right of possession under the lease and regain possession of the Property. HPA alleged that the Salazars defaulted on the 2018 Lease by failing to timely pay rent for the months of September and October 2018, HPA terminated the Salazars' right to possession of the Property pursuant to the lease, HPA gave the Salazars notice to vacate the Property, and the Salazars failed to comply. HPA further alleged that it was injured when the Salazars failed to vacate the Property. Thus, HPA pleaded facts sufficient to demonstrate that as the lessor under the 2018 Lease, it had a right to regain possession of the Property from the Salazars in the event the Salazars defaulted on the lease, it had been personally injured when the Salazars defaulted on the lease and refused to vacate the premises, and that its injury was likely to be redressed by a forcible detainer action against the Salazars. *See Heckman*, 369 S.W.3d at 154.

The Salazars' arguments that HPA did not have standing to bring this forcible detainer action because HPA was not the Property's owner or did not meet the

statutory definition of a "landlord" are unavailing. First, the existence of a landlord-tenant relationship is not a prerequisite to jurisdiction. *See Jelinis, LLC v. Hiran*, 557 S.W.3d 159, 167 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Second, the Property Code authorizes a "landlord" to bring a forcible detainer action against a tenant to reclaim possession of real property. *See* TEX. PROP. CODE §§ 24.001–.011. The code defines the term "landlord" to include a "lessor" as well as an "owner." TEX. PROP. CODE § 92.001(2) (defining "landlord" as "the owner, lessor, or sublessor of a dwelling . . . ."). A lessor is someone "who leases real property to another." Black's Law Dictionary (11th ed. 2019) (defining landlord as "[s]omeone who rents a . . . building, or piece of land to someone else" and as "lessor"). HPA presented evidence that it satisfies this requirement because it is the lessor under the 2018 Lease. *See* TEX. PROP. CODE § 92.001(2). HPA's status as a lessor/landlord demonstrates that it has a justiciable interest in the outcome of this proceeding. *See Williams v. Bayview–Realty Assocs.*, 420 S.W.3d 358, 362 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("If there is a landlord-tenant relationship between Bayview and Williams regarding the Property, then Bayview has standing to bring the forcible-detainer action."); *see also Austin Nursing Ctr.*, 171 S.W.3d at 848 (stating issue of standing focuses on whether party has sufficient relationship with lawsuit so as to have "justiciable interest" in its outcome).

We conclude that HPA had standing to bring the forcible detainer action to regain possession of the Property. *See Heckman*, 369 S.W.3d at 154.

## D.    Question of Title

The Salazars further contend that the justice and county courts did not have subject matter jurisdiction in this case because the 2015 Agreement raises questions of title.

The existence of a title dispute, however, does not automatically deprive a county court of jurisdiction in a forcible detainer action. *See Rice*, 51 S.W.3d at 713. Only when an issue of title is so intertwined with the issue of possession that a court must resolve the title dispute before determining which party has a superior right to immediate possession does the county court lose jurisdiction. *See id*; *see also Yarbrough*, 455 S.W.3d at 280. As previously discussed, HPA presented evidence establishing a landlord-tenant relationship between it and the Salazars, namely, the 2018 Lease.[1] The lease gives HPA the right to terminate the Salazars' right of possession if the Salazars default on the lease and regain possession of the Property. This evidence demonstrates that HPA, as lessor, has a superior right to immediate

---

[1]    We note that the 2018 Lease defines HPA as the "landlord" and the Salazars as "tenants." The Property Code defines a "landlord" as "the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease." TEX. PROP. CODE § 92.001(2). "Tenant" is defined as "a person who is authorized by a lease to occupy a dwelling to the exclusion of others and . . . who is obligated under the lease to pay rent." *Id.* § 92.001(6).

13

possession of the Property pursuant to the lease. A landlord-tenant relationship provides "an independent basis on which the trial court could determine the issue of immediate possession without resolving the issue of title to the property." *Rice*, 51 S.W.3d at 712.

The Salazars, who do not contend to own or have title to the Property, argue that the 2015 Agreement is evidence that they have a "right to lease and purchase" the Property, and therefore, have a superior right to immediate possession of the Property. Until the purchaser fully performs a real estate purchase agreement, he has only an equitable right to acquire title in the future by carrying out the agreement. *See Haith*, 596 S.W.2d at 197 (stating plaintiff who has not fully performed real estate purchase contract "possesses only equitable rights, not equitable title"). A claim of an equitable right to complete performance of a purchase contract or right to purchase real property in the future does not create a genuine title dispute and, therefore, it does not deprive a county court of jurisdiction to render a judgment of immediate possession in a forcible detainer action. *See id.*

Relying upon Chapter 5, Subchapter D of the Texas Property Code, the Salazars also argue that the 2015 Agreement is an executory contract and that once they exercised their option to purchase the Property pursuant to the 2015 Agreement, they became purchasers, not tenants, and therefore, they could not be evicted in a forcible entry and detainer suit. *See* TEX. PROP. CODE § 5.062(a)(2) (stating "an

14

option to purchase real property that includes or is combined or executed concurrently with a residential lease agreement, together with the lease, is considered an executory contract for conveyance of real property."); TEX. PROP. CODE § 5.0621(b) ("After a tenant exercises an option to purchase leased property under a residential lease described by subsection (a), Chapter 92 [of the Property Code, regarding residential tenancies] no longer applies to the lease.").

Even if the Salazars are correct that the 2015 Agreement is an executory contract and, therefore, they became purchasers once they exercised their option to purchase the Property pursuant to that agreement, their argument is unavailing. Regardless of what rights or relationship the parties may or may not have pursuant to the 2015 Agreement, the record reflects that HPA's claim for forcible detainer is based on the 2018 Lease, not the 2015 Agreement. Unlike the 2015 Agreement, the 2018 Lease does not contain an option to purchase and it does not constitute an executory contract or contract for deed. *See generally* TEX. PROP. CODE § 5.062(a)(2) (stating that "an option to purchase real property that includes or is combined or executed concurrently with a residential lease agreement, together with the lease, is considered an executory contract for conveyance of real property"); *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005) ("Executory contracts [are] also known as contracts for deed.").

Because the evidence shows that a landlord-tenant relationship exists between HPA and the Salazars that would have provided the lower courts with an independent basis for resolving the issue of possession, the justice court, and county court on appeal, have jurisdiction over HPA's forcible detainer claim. *See Rice*, 51 S.W.3d at 712.

## E. Evidentiary Challenge

The Salazars argue that the trial court erred by not admitting into evidence an unsigned copy of the 2015 Agreement.[2] Even if the county court's ruling was in error, the omission of this evidence was harmless because it does not create a genuine title dispute that would deprive the county court of jurisdiction in this forcible detainer action or would otherwise have probably caused the rendition of an improper judgment. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 812 (Tex. 2010) (noting that exclusion of evidence is reversible error only if error probably caused rendition of improper judgment); *see also* TEX. R. APP. P. 44.1(a). As

---

[2] The parties disagree about whether the 2015 Agreement was effective when HPA initiated the forcible detainer action and whether the Salazars have any remaining rights under 2015 Agreement. They also disagree about whether the 2015 Agreement or 2018 Lease govern their dispute. We do not need to resolve these questions, however, to determine whether the lower courts had jurisdiction over this matter, and we express no opinion on these issues. As the Salazars acknowledge in their reply brief, "The issue of which agreement controls the parties['] dispute (the 2015 or 2018 agreements) will be decided in the District Court wrongful eviction action (Cause No. 2019-17589, District Court, Harris County) filed by the Salazars against HPA Texas, and the other parties to and from which it bought and sold the Darby House."

16

previously discussed, the Salazars are asserting an equitable right to acquire title to the Property in the future pursuant to the 2015 Agreement. Such a claim does not raise a genuine question of fact regarding title and, therefore, it does not deprive a county court of jurisdiction to render a judgment of immediate possession in a forcible detainer action. *See Haith*, 596 S.W.2d at 197. The only issue before the county court was whether HPA or the Salazars had a superior right to immediate possession of the property. The 2018 Lease gives HPA, as the lessor, the right to terminate the Salazars' possession of the Property and regain possession if the Salazars defaulted on the lease. Thus, as previously discussed, the lease provided "an independent basis on which the trial court could determine the issue of immediate possession without resolving the issue of title to the property." *Rice*, 51 S.W.3d at 712.

We overrule the Salazars' evidentiary issue.

### F. Post-Trial Motions

The Salazars argue that the county court erred by concluding that its plenary power had expired and, therefore, it did not have jurisdiction to consider the Salazars' June 2019 and August 2019 motions challenging the court's subject matter jurisdiction.

A trial court retains plenary power over a case for thirty days after it has signed a final judgment. TEX. R. CIV. P. 329b(d). The timely filing of a motion for new trial,

17

however, can extend this period up to an additional seventy-five days. TEX. R. CIV. P. 329b(c), (e), (g). Ordinarily, a trial court may not set aside a judgment after its plenary power has expired, although one exception is when the court did not have subject-matter jurisdiction when it signed the judgment, as a "void judgment does not cause the trial court's plenary power to expire." *Akinwamide v. Transp. Ins. Co.*, 499 S.W.3d 511, 520 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (quoting *Metro. Transit Auth. v. Jackson*, 212 S.W.3d 797, 801, 803 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)); *see also* TEX. R. CIV. P. 329b(f) ("On expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law . . . .").

As previously discussed, the county court had subject matter jurisdiction over HPA's forcible detainer action, and therefore, its March 27, 2019 judgment was not void. Because the judgment was not void, the court only had jurisdiction to set aside the judgment when it had plenary power over the case. *See id.* The record reflects that the county court entered its judgment on March 27, 2019 and although the Salazars filed a motion for new trial on April 25, 2019 which extended the court's plenary power beyond the initial thirty-day period, their withdrawal of that motion on May 7, 2019 caused the court's plenary power to expire at that time. *See Rogers v. Clinton*, 794 S.W.2d 9, 11 (Tex. 1990) ("Rule 329b, as presently written, does not

18

authorize a trial court to order a new trial when the movant has deliberately withdrawn his motion and more than 30 days have passed since the judgment was signed."); *Galbraith v. Williams Cos., Inc.*, No. 01-15-01084-CV, 2017 WL 2872306, at *7 (Tex. App.—Houston [1st Dist.] July 6, 2017, pet. denied) (mem. op.) (stating trial court immediately lost plenary power upon withdrawal of post-trial motion); *In re P.M.G.*, 405 S.W.3d 406, 414 (Tex. App.—Texarkana 2013, no pet.) (holding trial court lost plenary power over case when party withdrew motion for new trial). Because the county court's plenary power expired when the Salazars withdrew their motion for new trial in May 2019, the county court lacked jurisdiction over the Salazars' June 2019 and August 2019 motions. Even if the county court could have exercised jurisdiction over these challenges to its jurisdiction, as previously discussed, neither the June motion, which argued that the court did not have jurisdiction over the case because there were questions of title, nor the August 2019 motion, which argued that HPA did not have standing because it did not own the property, was meritorious.

## G. Emergency Relief

The Salazars, who did not file a supersedeas bond, argue on appeal that this court erred by denying their "emergency" motions to stay enforcement of judgment pending appeal because Property Code section 24.007 does not apply to void judgments. *See* TEX. PROP. CODE § 24.007 ("A judgment of a county court may not

19

under any circumstances be stayed pending appeal unless, within 10 days of the signing of the judgment, the appellant files a supersedeas bonds in an amount set by the county court."). The Salazars' argument is unavailing because, as previously discussed, the county court's judgment was not void. Accordingly, we overrule the Salazars' challenge to the denial of their motions to stay enforcement of the judgment.

## Conclusion

We affirm the county court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Keyes, Lloyd, and Landau.